926 F.2d 573
 Walter PESTRAK, Plaintiff-Appellee Cross-Appellant,
v.
OHIO ELECTIONS COMMISSION, et al., Defendants.
Harry Lehman, Judith Moss, Dorothy Washington, Thomas Moody,
Larry James, Defendants-Appellants Cross-Appellees.
 Nos. 88-3131, 88-3132.
 United States Court of Appeals,
Sixth Circuit.
 Argued Sept. 27, 1988.
Decided Feb. 27, 1991.
 
 James E. Melle (argued), Lucas, Prendergast, Albright, Gibson & Newman, Columbus, Ohio, for plaintiff-appellee cross-appellant.
 John W. Zeiger, Jones, Day, Reavis & Pogue, Columbus, Andrew I. Sutter, Robert W. Hamilton, (argued), Asst. Atty. Gen., Office of Atty. Gen., Columbus, Ohio, for defendants-appellants cross-appellees.
 Daniel T. Kobil, Capital University Law School, Elinor R. Alger, American Civ. Liberties Union of Ohio, Columbus, Ohio, for amicus curiae American Civ. Liberties Union of Ohio Foundation, Inc.
 Before BOGGS, Circuit Judge, ENGEL, Senior Circuit Judge,* and BALLANTINE, District Judge.**
 BOGGS, Circuit Judge.
 
 
 1
 Walter Pestrak brought this suit to complain about the actions of the Ohio Elections Commission in several aspects of its function as the "policer of clean elections" under authority granted to it by the Ohio legislature. The Commission assessed the truthfulness of statements made by Pestrak as a candidate, damaged his campaign both by investigating certain statements made by Pestrak and by finding probable cause to believe he violated Ohio law by making false statements, and ultimately recommended criminal prosecution, although no prosecution was brought.
 
 
 2
 The court below found all parts of the statute authorizing the Commission to undertake the above actions to be unconstitutional on their face, and also found unconstitutional the Commission's power to levy fines and issue cease and desist orders. It denied damages against any of the defendants personally on grounds of qualified immunity. We affirm the decision of the district court with regard to qualified immunity, and with regard to the unconstitutionality of the Commission's power to levy fines or issue cease and desist orders. We reverse the decision of the district court in all other respects and uphold the power of the Commission to initiate investigations, to refer matters for prosecution, and to state its opinion on the truth or falsity of matters within its purview.
 
 
 3
 * The facts of this case are set forth in greater detail in the district court's opinion, Pestrak v. Ohio Elections Commission, 670 F.Supp. 1368 (S.D.Ohio 1987). Only the essential highlights will be set forth here. Walter Pestrak, a candidate for the office of Trumbull County, Ohio, Commissioner in the Democratic primary of May 1984, placed newspaper ads suggesting his opponent, the incumbent Commissioner, had committed illegal acts. The opponent filed a complaint with the Ohio Elections Commission, charging Pestrak with intentionally disseminating a falsehood concerning a candidate for election, in violation of Ohio Rev.Code Sec. 3599.091(B)(10).
 
 
 4
 Section 3599.091(B)(10) states that no person, during the conduct of a political campaign, using campaign material, shall "[p]ost, publish, circulate, distribute, or otherwise disseminate a false statement, either knowing the same is false or with reckless disregard of whether it was false or not, concerning a candidate that is designed to promote the election, nomination, or defeat of the candidate." Section 3599.091(B)(1)-(B)(9) prohibits various specific types of statements, mostly false ones, made during campaigns. The various prohibitions of Sec. 3599.091(B) are enforced by Subsections (C), (D), and (E). Subsection (C) authorizes the Commission to investigate charges made under the law, hold hearings, and make findings as to whether the statute has been violated. If it finds that the statute has been violated, the Commission can either impose a fine of less than $1,000, Subsection (D)(1)(A), transmit a copy of its findings to the appropriate county prosecutor, Subsection (D)(1)(B), or, if certain conditions are met, issue a cease and desist order against the speaker, Subsection (E). A violation of this statute is a misdemeanor of the first degree.[1]
 
 
 5
 The Commission scheduled a hearing the day before the election, found probable cause to believe that Pestrak violated the statute, and ordered that its findings be turned over to the county prosecutor. No other action was taken against Pestrak, but he did lose the election.
 
 
 6
 Pestrak sued for declaratory and monetary relief under 42 U.S.C. Sec. 1983 against the Ohio Elections Commission and its members. After various preliminary motions were decided, Pestrak's suit continued for injunctive relief and a declaration of the unconstitutionality of various parts of the statute, and for damages against the individual commissioners.
 
 
 7
 On October 8, 1987, the district court granted Pestrak's motion for summary judgment. The court held that Sec. 3599.091(C), (D), and (E) are unconstitutional because they permit an administrative adjudication that can constitute a prior restraint on constitutionally protected speech, and because they permit liability to be assessed upon evidence that is less than clear and convincing. The court also dismissed the commissioners in their individual capacities. Pestrak, 670 F.Supp. at 1378. The appellants then filed a Motion to Alter or Amend Judgment. This motion was denied in part and granted in part, the trial judge agreeing to modify his ruling as to make clear that Sec. 3599.091(A), prohibiting placing spies in opponents' campaigns and bribing opponents' campaign workers, was still valid. Pestrak v. Ohio Elections Commission, 677 F.Supp. 534 (S.D.Ohio 1988). This appeal followed.
 
 II
 
 8
 As a preliminary matter, the defendants challenge Pestrak's standing to attack portions of the statute that were not applied to him, either because the Commission failed to make the necessary decision (the cease and desist provisions) or because the statute authorizing them was not in existence at the time of the application to Pestrak (the fine provisions). They also argue that the particular election that was the genesis of this controversy is now over. Because the changes in the statute may easily be comprehended and address the arguments already made, and because this controversy certainly remains a live one (Pestrak has filed a motion to expedite the decision and has stated that he wishes to continue running for office or speaking concerning future campaign issues), we hold that Pestrak has standing to bring all of the challenges involved in this suit.
 
 
 9
 Our court has laid out its approach to standing questions in Planned Parenthood v. City of Cincinnati, 822 F.2d 1390, 1394 (6th Cir.1987). Two matters are required for standing. First, there must be an actual case or controversy, which can be shown by proving an "injury in fact" that can be redressed by a favorable decision. Second, as a prudential matter, the plaintiff must be a proper proponent, and the action a proper vehicle, to vindicate the rights asserted.
 
 
 10
 The injury alleged can be either a past or future injury, as the litigant need not actually undergo prosecution, especially in the first amendment area. See Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); Babbitt v. United Farm Workers National Union, 442 U.S. 289, 302, 99 S.Ct. 2301, 2311, 60 L.Ed.2d 895 (1979). Pestrak easily meets this requirement for standing. He was charged and investigated by the Commission, and the Commission recommended his prosecution. While it is true that the fine and the cease and desist provisions were not applied to him, he has furnished an affidavit, not contradicted in any way, that he desires to continue his political activities and that he may make other assertions that could make him the subject of action by the Commission. Thus, this controversy remains continuing and live. In Steffel, a general disagreement with the Vietnam War was found to be a continuing live controversy even though the United States had withdrawn its combat forces. This is much closer to our situation, where Pestrak avers a continuing desire to affect and participate in politics in Trumbull County, than is the leading case of Golden v. Zwickler, 394 U.S. 103, 109, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969). There, a controversy concerning a handbill attacking a particular Congressman was held not to be continuing and live after the Congressman had retired.
 
 
 11
 The second requirement is that generally a plaintiff must be asserting his own rights and interests and not solely those of third parties. Secretary of State of Maryland v. Joseph H. Munson Co., 467 U.S. 947, 955, 104 S.Ct. 2839, 2846, 81 L.Ed.2d 786 (1984). Based on his affidavit, Pestrak meets this requirement. In addition, in cases involving the first amendment "the Court has enunciated other concerns that justify a lessening of prudential limitations on standing ... when there is a danger of chilling free speech...." Id. at 956, 104 S.Ct. at 2846. We hold that Pestrak does satisfy what the Supreme Court characterized as the "crucial issues" of the requirement of injury in fact and of satisfactorily framing the issues in the case. Id. at 958, 104 S.Ct. at 2847. Therefore, we hold that Pestrak has standing to bring this action.
 
 III
 
 12
 * Pestrak and amicus A.C.L.U. argue broadly that the entire statute is unconstitutional on its face, regardless of how it is enforced, because its basic purpose is to distinguish among types of political speech based on their content. This contention is untenable. Most of the parts of the statute specifically affect only the knowing making of false statements. Ohio Rev.Code Sec. 3599.091(B)(2)-(B)(7), (B)(9). Subsection (B)(10), under which Pestrak was charged, punishes making a false statement either knowingly, or with reckless disregard as to its falsity. These portions of the statute clearly come within the Supreme Court holdings in Garrison v. Louisiana, 379 U.S. 64, 75, 85 S.Ct. 209, 216, 13 L.Ed.2d 125 (1964) and New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). These cases indicate that false speech, even political speech, does not merit constitutional protection if the speaker knows of the falsehood or recklessly disregards the truth. The Court in Garrison stated that simply because "speech is used as a tool for political ends does not automatically bring it under the protective mantle of the Constitution ... the knowingly false statement and the false statement made with reckless disregard of the truth do not enjoy constitutional protection." Garrison, 379 U.S. at 75, 85 S.Ct. at 216. Thus, on its face, the statute is directed against, and Pestrak was charged with issuing, speech that is not constitutionally protected. The court below was correct in holding that the statute is not unconstitutional on its face for those reasons.[2] We now turn to the procedures used for the enforcement of the statute's prohibitions.
 
 B
 
 13
 The Commission may use four methods to enforce its findings: fines, cease and desist orders, reference for prosecution, and public declaration. With regard to fines and cease and desist orders, the Commission has the power to levy fines and issue cease and desist orders against those it finds to have violated the statutes by making various kinds of untrue statements, or, in certain instances, true statements in an unapproved form.[3] In this role the Commission, an administrative body, acts as a judicial body in issuing legally binding sanctions for political speech.
 
 
 14
 We agree with the district court that these two enforcement methods are unconstitutional, for two major reasons. Both of these reasons flow from the fact that the law permits an administrative agency, rather than a court, to make binding determinations regarding the legality of certain forms of speech.
 
 
 15
 First, the Supreme Court has held that no punishment may be levied in areas trenching on the first amendment involving public figures without "clear and convincing evidence." New York Times v. Sullivan, 376 U.S. 254, 285-86, 84 S.Ct. 710, 728-29, 11 L.Ed.2d 686 (1963); Anderson v. Liberty Lobby, 477 U.S. 242, 252-53, 106 S.Ct. 2505, 2512-13, 91 L.Ed.2d 202 (1986). Because the Commission is not a judicial body, it is not covered by restrictions on judicial proceedings and may make its judgments using a lower evidentiary standard. The Commission now argues that it has itself determined, as a policy, to follow a "clear and convincing" standard. However, the Commission could at any time change that rule. Thus, the degree of protection required by the first amendment has not been secured.
 
 
 16
 Second, cease and desist orders are a forbidden prior restraint, not a subsequent punishment. Prior restraint of speech is unconstitutional unless certain safeguards are present. Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 560, 95 S.Ct. 1239, 1247, 43 L.Ed.2d 448 (1975). We also note that "prior administrative restraint of distinctively political messages on the basis of their alleged deceptiveness is unheard of--and deservedly so." Lebron v. Washington Metropolitan Area Transit Authority, 749 F.2d 893, 898-99 (D.C.Cir.1984). Even when there is the strongest reason for restraint, as in the possibility of public disorder, there must be an immediate opportunity for judicial review, which is not present here. See National Socialist Party of America v. Village of Skokie, 432 U.S. 43, 44, 97 S.Ct. 2205, 2206, 53 L.Ed.2d 96 (1977). The district court case of Tomei v. Finley, 512 F.Supp. 695, 698 (N.D.Ill.1981), on which Ohio relies, is not helpful. There, a district court enjoined a flatly false appropriation of a political party name, but the action was taken by a court, not an administrative body.
 
 C
 
 17
 The third role played by the Commission is that of recommending prosecution. The ultimate decision on prosecution is clearly made by the prosecuting attorney, and in that role full prosecutorial immunity would apply. Imbler v. Pachtman, 424 U.S. 409, 422 n. 20, 96 S.Ct. 984, 991 n. 20, 47 L.Ed.2d 128 (1976). To the extent the Commission is a formal adjunct of the prosecutor's office, it would share in its immunity. To the extent it does nothing more than recommend, then its actions, per se, have no official weight and cannot be the cause of a deprivation of constitutional rights. In just the same sense, a newspaper, Congressman, or private citizen urging a prosecutor to bring a certain prosecution is not performing an official act, any more than are various officials who may "refer matters to the Justice Department" for a decision on prosecution.D
 
 
 18
 The fourth and final role played by the Commission can be described as the "truth-declaring" function. The Commission determines and proclaims to the electorate the truth of various campaign allegations. This function raises some of the most interesting questions as to the actions of the Commission. There is a serious question regarding the power of the government to engage in the political process by undertaking official government action to adjudicate the truth of statements in an election. It also raises the question of whether such a function intrudes on the freedom of speech of candidates or private individuals.
 
 
 19
 At the same time, we must assess how, if at all, the actions of the Commission differ from the routine actions of government officials, government agencies, or government sponsored news media in reporting news, publishing statistics, making speeches, or undertaking other actions that constitute some type of statement as to the truth of matters affecting the political process.
 
 
 20
 What is happening in this case, with regard to the "truth declaring" function of the Commission, is that the Commission is making judgments, and publicly announcing those judgments to the world, as to the truth or falsity of the actions and statements of candidates and others intimately involved in the political process. These activities are closely comparable to those now carried on by many agencies of government. Thus, we regularly see: various high officials of the executive and legislative branches asserting the untruth of statements made by political opponents and the veracity of statements with which they agree. See Taxation with Representation of Washington v. Regan, 676 F.2d 715, 740-41 (D.C.Cir.1982); Block v. Meese, 793 F.2d 1303, 1314 (D.C.Cir.1986); members of Congress, following hearings at which testimony may be compelled, issue reports declaring the truth or falsity of matters of the utmost importance to public policy and election campaigns. See Doe v. McMillan, 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973); government agencies declare the truth or falsity of statements with regard to apparently "technical" matters such as the inflation rate, the unemployment rate, energy reserves, infant mortality rates, or the population of the United States and its political subdivisions. See Community for Creative Non-Violence v. Pierce, 814 F.2d 663, 664-65 (D.C.Cir.1987); and, government funded and sponsored news media, such as National Public Radio and the Corporation for Public Broadcasting/Public Broadcasting System regularly issue statements as to the truth or falsity of statements made by public officials. See Accuracy In Media v. F.C.C., 521 F.2d 288 (D.C.Cir.1975). As the Third Circuit noted in United States v. Frame, 885 F.2d 1119, 1131 (3d Cir.1989), the federal government purchases quite a lot of speech in its many activities. All of this "speech" can have the most direct effect on governmental activities, as well as influencing public debate and election campaigns.
 
 
 21
 In all of these ways, the government currently engages in speech, and does not, thereby, chill or violate the free speech of anyone else. None of the agencies mentioned above must adhere to the Garrison standards of what may be proscribed, or speak only if there is "clear and convincing" evidence of their assertions.
 
 
 22
 In this case, the Ohio Elections Commission does not violate the first amendment simply because it is a publicly created commission with a certain statutory mandate. We have no way of knowing the exact efficacy or degree of public trust given to its statements, as opposed to any of the agencies listed above, and we do not believe that the constitutionality or unconstitutionality of government-sponsored speech rests on whether that speech is believable to any particular proportion of the public. At bottom, the fact remains that the statements and findings of the Commission fall exactly within the tenet that "the usual cure for false speech is more speech." Kleiner v. First Nat. Bank of Atlanta, 751 F.2d 1193, 1206 n. 27 (11th Cir.1985). Cf. Whitney v. California, 274 U.S. 357, 377, 47 S.Ct. 641, 649, 71 L.Ed. 1095 (1927) (Brandeis, J., concurring).
 
 
 23
 We note that an even more egregious government intervention in the process of electoral debate was upheld in Geary v. Renne, 914 F.2d 1249 (9th Cir.1990). There the Ninth Circuit upheld the action of California officials in removing false statements made by a candidate from a voter's information booklet mailed to all voters at state expense. The state thus, based on the Garrison standards, undertook to spend state money to promote the views of one candidate, while denying an equal opportunity to other candidates, based on the truth or falsity of their statements.
 
 
 24
 To paraphrase Jefferson, "It does no injury to say that Pestrak told twenty lies or no lie. It neither picks his pocket nor breaks his leg." See T. Jefferson, Notes on the State of Virginia 159 (W. Peden, ed. 1954) (1787). It is ultimately up to the voters to judge both the propriety and truth of the official statements.
 
 IV
 
 25
 With regard to the issue of the qualified immunity of the members of the Elections Commission for liability in undertaking their duties under the state law, a decision is no longer absolutely essential. The only parts of the statute we hold unconstitutional, and thus the only parts for whose enforcement liability could possibly attach, are the fine and cease and desist provisions, which were never enforced by these members.
 
 
 26
 We note that, in any event, the case for qualified immunity would be a strong one, as there has never been a case, prior to the actions here, holding a state campaign practices law unconstitutional, where it operated under the Garrison standards. Indeed, the very law in question had been upheld in DeWine v. Ohio Elections Commission, 61 Ohio App.2d 25, 399 N.E.2d 99 (Ct.App.1978). Qualified immunity is afforded to the official actions of government officials according to the standards established in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity extends to every official action except those that any reasonable official knew or reasonably should have known violated a clearly established constitutional right. Harlow, 457 U.S. at 818, 102 S.Ct. at 2738; Dominique v. Telb, 831 F.2d 673, 676 (6th Cir.1987). In light of the many cases referred to earlier permitting government agencies to offer their opinions on important political issues, we do not believe that the Ohio defendants violated any "clearly established" constitutional rights of Pestrak.
 
 V
 
 27
 For the foregoing reasons, the judgment of the district court granting summary judgment for the individual defendants based on qualified immunity is AFFIRMED. The judgment of the district court finding Ohio Rev.Code Sec. 3599.091(D)(1)(A) and (E) unconstitutional is AFFIRMED. The judgment of the district court finding Ohio Rev.Code Sec. 3599.091(C) and (D)(1)(B) unconstitutional is REVERSED.
 
 
 
 *
 The Honorable Albert J. Engel became Senior Circuit Judge on October 1, 1989
 
 
 **
 The Honorable Thomas Ballantine, Jr., United States District Judge for the Western District of Kentucky, sitting by designation
 
 
 [1]
 References are to the current statute, as amended through 1987. In 1984, the numbering was somewhat different, and the power to levy fines, Subsection (D)(1)(A), was not in the statute
 
 
 [2]
 Certain portions of the statute, not at issue here, may pose greater problems. Ohio Rev.Code Sec. 3599.091(B)(1) proscribes the use of terms and titles in certain ways that "imply" certain things. Thus, a former governor may not use the term "elect Governor Smith" if he is not in fact the incumbent governor, nor may an incumbent senator who holds the office by appointment use the term "re-elect." Subsection (B)(5) prohibits the making of certain statements, such as that a candidate has been indicted, even if true, if not accompanied by additional information as to the outcome of the charges. Subsection (B)(8), regarding false identification of sources, may be undermined by the Ninth Circuit's decision in Masson v. New Yorker Magazine, 881 F.2d 1452 (9th Cir.), amended en banc 895 F.2d 1535, cert. granted, --- U.S. ----, 111 S.Ct. 39, 112 L.Ed.2d 16 (1990). We express no opinion as to whether these sections might be used to prohibit speech that, because of differences of interpretation, would not be "knowingly false" or made with "reckless disregard of the truth" under Garrison
 
 
 [3]
 Sec. 3599.09(B)(5) prohibits making the true statement that a candidate has been indicted without including in the same statement the result of the indictment