Roger ANCHETA, Plaintiff,

v.

Robert Y. WATADA; Duane Black; Della Au; Andrea Low; Clifford Muraoka; and May Oshiro, Defendants.

No. CIV.99–00521HG–LEK.

United States District Court,
D. Hawai'i.

Jan. 30, 2001.

David F. Simons, Matthew J. Viola, Honolulu, for Plaintiff.

Pamela A. Toguchi, Russell A. Suzuki, Office of the Attorney General, Honolulu, for Defendants.

## AMENDED ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

GILLMOR, District Judge.

Plaintiff filed suit in this Court claiming that the Code of Fair Campaign Practices (the "Code") and the Hawaii Campaign Spending Commission's (the "Commission") censure of him are unconstitutional abridgements of free speech. On June 15, 2000, Plaintiff filed his Motion for Summary Judgment ("Plaintiff's Motion"). Defendants oppose the motion by contending that Plaintiff voluntarily obligated himself to the limitations of the Code and therefore waived any rights he now claims were abridged.

After careful consideration of the parties' memoranda, the record and the arguments made at the hearing held before this Court, the Court hereby GRANTS Plaintiff's Motion for Summary Judgment.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Roger Ancheta was a Republican Party candidate for the State of Hawaii 18th Senate District race during the 1998 general election. Plaintiff's opponent was the incumbent, Democratic Senator Randall Iwase. On or about October 30, 1998, Plaintiff mailed a flier depicting a cartoon caricature of Iwase sitting in a money-stuffed pocket labeled "Special Interests." (Plaintiff's Motion at 5). The flier also read:

> Who has Randy Iwase served? Himself. When Randy Iwase was Chair of the Senate Planning, Land and Water Use Committee, his downtown law firm received a MILLION DOLLARS from **Bishop Estate** for *Land and Water Use* legal work.

The flier cited the Honolulu Advertiser, September 29, 1998, as the source of the information.

The Code of Fair Campaign Practices was enacted by the State of Hawaii Campaign Spending Commission (the "Commission") pursuant to Hawaii Revised Statutes ("HRS") § 11–193(a)(8). The Code states that "[e]very candidate for public office has an obligation to observe and uphold basic principles of decency, honesty and fair play .... Every candidate for public office in the State of Hawaii is expected by the voters to adhere to the following basic principles." The Code goes on to list nine provisions describing the appropriate conduct to which candidates are expected to adhere. If a candidate fails to sign the Code, the fact that the candidate failed to sign the Code is made public. *See* Hawaii Administrative Rules ("HAR") § 2–14.1–25. (Plaintiff's Motion, Exh. 6 (Watada Depo.) at 24). A list of the candidates who endorsed the Code and those who did not is posted on a website maintained by the Commission. *See id.* (Plaintiff's Motion, Exh. 9). Candidates who agreed to adhere to the Code and are later found to have breached it are subject to censure. *See* HRS § 11–193(a)(16).

Iwase won the November 3, 1998 general election and retained his senate seat. On November 20, 1998, Iwase sent a letter to the Commission alleging that Plaintiff's

flier violated the Code by "misrepresent[ing], distort[ing], or otherwise falsif[ying] the facts regarding the candidate," and that the flier amounted to a "personal vilification [and] character defamation." (Plaintiff's Motion, Exh. 7). Iwase asked the Commission to investigate and possibly to censure or fine Plaintiff for alleged violations of the Code. (*Id.*).

On February 9, 1999, the Commission addressed Iwase's complaint. Plaintiff was not in attendance at the meeting but had submitted a letter in opposition which argued that the facts contained in the flier were true. (Plaintiff's Motion, Exhs. 3 and 8). The Commission voted unanimously to censure Plaintiff for violating provisions 2 and 3 of the Code of Fair Campaign Practices. Provision 2 states that the candidate "shall not use campaign material relating to any candidate's election which misrepresents, distorts, or otherwise falsifies the facts regarding the candidate." Provision 3 states that the candidate "shall refrain from the use of personal vilification, character defamation, or any other form of scurrilous personal attacks on any candidate or his family." (Plaintiff's Motion, Exh. 1).

On February 11, 1999, the Commission issued its letter of censure against Plaintiff. (Plaintiff's Motion, Exh. 4). The letter explained that the Commission concluded that the flier distributed by Plaintiff contained personal attacks and constituted personal vilification and character defamation in violation of the Code. The Commission indicated that the letter of censure would be placed in Plaintiff's public candidate file. (*Id.*). Robert Watada, the Executive Director of the Campaign Spending Commission, indicated he believes the letter is still in Plaintiff's file and available for view by the public. (Plaintiff's Motion, Exh. 6 at 22–23).

Plaintiff's censure was published by the local media. (Plaintiff's Motion, Exh. 5).

Plaintiff did not contest the administrative determination of the Campaign Spending Commission through administrative channels nor did he seek review in state court as permitted under state law.

Plaintiff filed a Complaint in this Court on July 21, 1999, alleging that the State of Hawaii's enforcement of the Code of Fair Campaign Practices violates his First Amendment rights and is unconstitutionally overbroad.

On February 2, 2000, the parties entered into a Stipulation for Dismissal as to Defendant State of Hawai'i Campaign Spending Commission, and for Partial Dismissal as to Defendant Robert Y. Watada, Duane Black, Della Au, Andrea Low, Clifford Muraoka, and May Oshiro. The Court dismissed, without prejudice, all claims in the action against Defendant State of Hawai'i Campaign Spending Commission and all claims for retroactive relief against Watada, Black, Au, Low, Muraoka, and Oshiro in all capacities in which they are named as defendants in this action, including claims for monetary damages. The Stipulation did not affect any claims for declaratory and injunctive relief brought pursuant to 42 U.S.C. § 1983 as to Defendants Watada, Black, Au, Low, Muraoka, and Oshiro in their respective official capacities.

Plaintiff filed his Motion for Summary Judgment on June 15, 2000, arguing that the Code unconstitutionally prohibits protected speech. On August 30, 2000, Robert Y. Watada, Duane Black, Della Au, Andrea Low, Clifford Muraoka, and May Oshiro ("Defendants") filed their opposition to Plaintiff's summary judgment motion. Defendants generally argue that Plaintiff waived his constitutional right to free speech by voluntarily signing the Code of Fair Campaign Practices and that

Plaintiff is barred from seeking redress in federal court because of the preclusive effect of the final determination of the Campaign Spending Commission.

On September 11, 2000, the Court heard the arguments of the parties.

### STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party has the initial burden of "identifying for the court the portions of the materials on file [in the case] that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 282 (9th Cir.1979). The opposing party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv.,* 809 F.2d at 630; Fed.R.Civ.P. 56(e). In a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party. *State Farm Fire & Casualty Co. v. Martin,* 872 F.2d 319, 320 (9th Cir.1989).

### ANALYSIS

Plaintiff's Motion argues that the Code of Fair Campaign Practices is unconstitutional on its face and as it is applied to him. The basis of Plaintiff's argument is that the Code permits the Commission to impose sanctions on a candidate for engaging in constitutionally-protected speech. Plaintiff asserts that the Code has the effect of prohibiting political speech that was held to be protected under the First Amendment by *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), including speech that is truthful, that was not made with actual malice, and that was not proven by the Commission to be malicious by clear and convincing evidence. Since only speech that does not comport with the protections of *New York Times* may be prohibited, Plaintiff asserts, the Code is unconstitutional.

Defendants do not dispute Plaintiff's argument that the Code has the effect of restricting constitutionally-protected speech. Rather, Defendants argue that participation in the restrictions placed on speech by the Code is voluntary, therefore, Plaintiff and other signatories to the Code have waived their rights under the First Amendment. Defendants also argue that Plaintiff may not assert his First Amendment claims because the Commission's final ruling, and Plaintiff's decision not to appeal that ruling, bars Plaintiff's suit in this Court under the doctrine of res judicata.

The Court finds that Plaintiff did not waive his ability to assert his First Amendment rights. The Court also finds that the Commission's administrative decision does not have preclusive effect on this proceeding and that the State of Hawaii's Code of Fair Campaign Practices unconstitutionally burdens protected speech. Accordingly, the Court GRANTS Plaintiff's Motion for Summary Judgment.

### I. The Commission's Administrative Ruling Does Not Preclude Plaintiff's Constitutional Claim in This Court

Defendants have argued that Plaintiff is precluded from arguing the constitutionality of the Code because he did not pursue

review of the Commission administrative decision.[1] This argument is without merit.

On February 9, 1999, the Commission held a meeting to address Iwase's complaint regarding the flier. Plaintiff was not in attendance at the meeting but submitted a letter in opposition which argued simply that the facts contained in the flier were true and that he felt he had an obligation to report certain facts to voters in his district. (Plaintiff's Motion, Exhs. 3 and 8). Plaintiff's letter did not address the constitutionality of the Code.

The Commission ruled on Iwase's complaint, holding that Plaintiff's flier contained personal attacks and constituted personal vilification and character defamation in violation of the Code. (Plaintiff's Motion, Exh. 4). The Commission's ruling did not address whether their censure of Plaintiff amounted to an unconstitutional abridgment of free speech. Under state law, the Commission is unable to rule on the constitutionality of its own actions. *See HOH Corp. v. Motor Vehicle Licensing Board*, 69 Haw. 135, 143, 736 P.2d 1271 (1987) ("The administrative agency is not empowered to pass on the validity of the statute; nor is it qualified to adjudicate the propriety of its own action.").

In order for this Court to determine whether Plaintiff is precluded from litigating his constitutional claim, the Court looks to state law on issue preclusion. *See Misischia*, 60 F.3d at 629 ("Federal courts must accord a state court judgment the same preclusive effect that the judgment would receive in state court."). Findings of fact by administrative agencies acting in quasi-judicial capacities as well as legal determinations may receive preclusive effect. *See University of Tennessee v. Elliott*, 478 U.S. 788, 798–99, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), *Miller v. County of Santa Cruz*, 39 F.3d 1030, 1032 (9th Cir. 1994).

■ Under Hawaii law, a plaintiff is precluded from relitigating facts or issues if (1) the issue decided in the prior adjudication is identical to the one presented in the action in question, (2) there a final judgment on the merits, and (3) the parties in the current action are the same or in privity to the parties in the prior action. *See Santos v. State of Hawaii*, 64 Haw. 648, 653, 646 P.2d 962 (1982), *Dorrance v. Lee*, 90 Hawai'i 143, 148, 976 P.2d 904 (1999).

■ An agency's determination will not be given preclusive effect unless it satisfies the requirements of fairness set out in *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). *See Miller*, 39 F.3d at 1032–33. *Utah Construction* requires that: (1) the administrative agency act in a judicial capacity, (2) the agency resolve disputed issues of fact properly before it, and (3) the parties have an adequate opportunity to litigate the issue. *See* 384 U.S. at 422, 86 S.Ct. 1545; *Miller*, 39 F.3d at 1033.

---

1. Defendants state: "Because Plaintiff failed to pursue state court review, the Commission's action 'became final'." (Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment at 11) (citing *Misischia v. Pirie*, 60 F.3d 626, 628 (9th Cir. 1995)). Defendants' argument could be interpreted as stating that Plaintiff failed to exhaust his state remedies. This argument, however, is unavailable. The law is clear that a plaintiff need not exhaust available state remedies before bringing a claim under 42 U.S.C. § 1983. *See Martinez v. Newport Beach City*, 125 F.3d 777, 782 (9th Cir. 1997), *Patsy v. Board of Regents*, 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). Accordingly, Defendants' argument that Plaintiff's failure to pursue review of the administrative decision is available only under a theory that the doctrines of preclusion bar his claim in this Court.

■ The Commission's decision to censure Plaintiff does not preclude Plaintiff from contesting the constitutionality of the Commission's action in this Court. The Commission did not address whether its action was an unconstitutional abridgment of free speech; indeed, the Commission is without authority to address the constitutionality of its own actions. *See HOH Corp.,* 69 Haw. at 143, 736 P.2d 1271 ("Where the statute is attacked on its face, the agency determination will rarely aid in the ultimate judicial resolution of the [claim]")(citing B. Schwartz, *Administrative Law* § 8.37, at 519 (2d ed.1984)). *Santos* and *Utah Construction* require that the administrative agency actually address the issue before a litigant will be precluded from addressing it in a subsequent proceeding. *See Santos,* 64 Haw. at 653, 646 P.2d 962, *Utah Construction,* 384 U.S. at 422, 86 S.Ct. 1545. The constitutionality of the Commission's censure, however, was not actually litigated or available to be litigated by the Commission. Therefore, Plaintiff is not precluded from raising that issue here.

Defendants rely on *Misischia v. Pirie,* 60 F.3d 626, to argue that Plaintiff abandoned his right to judicial review of the constitutionality of the Commission's action because he failed to appeal the Commission's decision. (Defendants' Opposition to Plaintiff's Motion for Summary Judgment at 11). *Misischia* cannot be read as Defendants propose.

In *Misischia,* plaintiff, an applicant for certification by the Dental Review Board in the State of Hawaii, brought a Section 1983 claim in federal court challenging the decision of the Board to deny his certification. Plaintiff argued before the federal court that the Board violated the Hawaii Administrative Rules by denying his appeal of the decision to deny his certification. The Board's alleged violation of the rules, according to Plaintiff, constituted a deprivation of due process. The Ninth Circuit held that the Board's determination that the Hawaii Administrative Rules were not violated was entitled to preclusive effect. Since the determination of whether the Hawaii Administrative Rules was not appealed, the Board's finding was final and plaintiff could not relitigate that claim in federal court.

Contrary to Defendants' assertion in the instant case, the court in *Misischia* did not hold that Dr. Misischia was barred from addressing his *due process claim* in federal court; rather, the Ninth Circuit held that Dr. Misischia was barred from relitigating the *factual basis* of his due process claim. *See Misischia,* 60 F.3d 626:

> Dr. Misischia, in his complaint in district court, restated his contentions that the Administrative Rules were violated, and claimed this amounted to a constitutional, due process violation. The judicial proceeding was based on the same allegations set forth in the [Board] action, so the unreviewed administrative finding precludes further litigation of Dr. Misischia's contentions.

*Id.* at 629 (internal citations and quotations omitted).

Unlike the plaintiff in *Misischia,* Plaintiff in the instant case does not seek to relitigate the factual basis of his constitutional claim; Plaintiff does not dispute that the Code was correctly applied to him. Rather, he contests that the Code, itself, creates an unconstitutional abridgment on free speech. This claim has not been litigated before and Plaintiff is not barred from asserting it in this Court.

## II. *The Code of Fair Campaign Practices Unconstitutionally Burdens Candidates' Rights of Free Speech*

Content-based restrictions on protected speech will only be upheld if the regulation

withstands strict scrutiny. *See Sable Communications of Cal., Inc. v. FCC*, 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989). The Code of Fair Campaign Practices seeks to regulate based on the content of a candidate's protected speech. Because the Defendants have presented no compelling justification for the restrictions on speech, such restrictions violate the First Amendment to the United States Constitution.

### A. The Code of Fair Campaign Practices Regulates Speech Based on Its Content

■ Regulations which abridge speech are either "content-based" or "content-neutral." *See Police Department v. Mosley*, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972); *Carey v. Brown*, 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980); *Perry Educ. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983); *Ward v. Rock Against Racism*, 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). A "content neutral" regulation is one that regulates speech without reference to its content or effect on the listeners, *see Ward*, 491 U.S. at 791, 109 S.Ct. 2746; a "content-based" regulation restricts speech precisely because of the ideas or information that the speech contains or because of its general subject matter. *See Mosley*, 408 U.S. at 95, 92 S.Ct. 2286. Because "content-based" restrictions fundamentally contradict the principles underlying the First Amendment, they are subjected to the strictest scrutiny to evaluate the legitimacy of governmental interference with speech. *See id.* ("[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.").

Here, the State of Hawaii seeks to regulate speech by requiring, inter alia, that candidates "not use campaign material relating to any candidate's election which misrepresents, distorts, or otherwise falsifies the facts regarding the candidate"; "refrain from the use of personal vilification, character defamation, or any other form of scurrilous personal attacks on any candidate or his family"; "condemn any appeal to prejudice based on race, sex, sexual orientation, religion, national origin or age"; and "not originate or spread any malicious or unfounded accusations against any candidate which are aimed at creating or exploiting doubts on the part of the public as to the candidate's loyalty and patriotism." *See* HRS § 11-193(8), HAR § 2-14.1-25(a) (Plaintiff's Motion, Exh. 1). These regulations are aimed at the ideas or information that the speech contains and its general subject matter. Because these aims relate to the direct communicative nature and impact of speech, this Court finds that the Code regulates speech on the basis of its content.

### B. The Speech Regulated by the Code of Fair Campaign Practices Is Protected by the First Amendment

■ The First Amendment will not protect all classes of speech. Speech that is "of such slight social value" may be outlawed because "any benefit that may be derived from [it] is clearly outweighed by the social interest in order and morality." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). Such unprotected speech and expressive conduct includes, for example, fighting words, *see R.A.V. v. City of St. Paul*, 505 U.S. 377, 384-85, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992), and obscene materials. *See Miller v. California*, 413 U.S. 15, 24, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).

Defendants have not argued that the speech subject to regulation by the Code is unprotected. Indeed, such an argument would be unavailable. The speech subject to regulation by the Code, specifically speech about current and prospective public officers, falls close to the core of the First Amendment. *See New York Times,* 376 U.S. at 270–71, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *see also Eu v. San Francisco County Democratic Central Committee,* 489 U.S. 214, 223, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989) ("We have recognized repeatedly that 'debate on the qualifications of candidates [is] integral to the operation of [our] system of government.'") (citing *Buckley v. Valeo,* 424 U.S. 1, 14, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976)), *Mills v. Alabama,* 384 U.S. 214, 218–19, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966) ("[T]here is practically universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs. This of course includes discussions of candidates, structures and forms of government ....").

The Code attempts to regulate defamatory statements by one candidate against another. Although defamatory speech is undeserving of First Amendment protections, *see Beauharnais v. Illinois,* 343 U.S. 250, 266, 72 S.Ct. 725, 96 L.Ed. 919 (1952), the Supreme Court has narrowly defined the permissible occasions to sanction a speaker who speaks on matters of public concern and political discourse. In *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the Supreme Court announced that the First Amendment placed limits on the application of state defamation law. The Court recognized the need for a federal rule protecting speech relating to public officials unless such speech was made with "actual malice." Actual malice requires proof that the statements were false or made with reckless disregard of their truth or falsity.

*See Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 14, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). This rule was prompted by a concern that, without such a rule, speakers would be chilled in criticizing or otherwise commenting on matters of their own governance. *See id.* (citing *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 334, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) and *New York Times,* 376 U.S. at 279, 84 S.Ct. 710). Demonstrating actual malice is subject to a clear and convincing standard of proof. *See Milkovich,* 497 U.S. at 15, 110 S.Ct. 2695 (citing *Gertz,* 418 U.S. at 342, 94 S.Ct. 2997).

The restrictions on speech aimed at curbing defamation are subject to First Amendment scrutiny. Because the Code is not limited to sanctioning defamatory speech against public candidates that is made with actual malice and proven to have been so made by clear and convincing evidence, the Code regulates speech that is protected under *New York Times.* As such, the Court must consider whether such regulations survive strict scrutiny. *See Sable Communications,* 492 U.S. at 126, 109 S.Ct. 2829.

### C. Hawaii's Regulation of Candidates' Speech Does Not Survive Strict Scrutiny

■ Regulation of protected speech based on its content is presumptively unconstitutional. *See R.A.V.,* 505 U.S. at 382, 112 S.Ct. 2538. It will survive scrutiny only if it is narrowly drawn and is necessary to serve a compelling state interest. *See Boos v. Barry,* 485 U.S. 312, 321, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988); *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).

■ The Defendants bear the burden of showing a compelling interest to justify the burden placed on protected speech. *See*

*First National Bank of Boston v. Bellotti,* 435 U.S. 765, 786, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978) (citing *Elrod v. Burns,* 427 U.S. 347, 362, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)). Here, the Defendants have proposed no interest to justify the burden on protected speech. Therefore, the Defendants have not met their burden and the regulation cannot be upheld.

Even if the Court were to attribute to the State the interest of preventing candidates from being discouraged from running for public office, such interest is not compelling. In a similar case, a newsletter publisher challenged the State of Hawaii's prohibition against publication of complaints. *See Lind v. Grimmer,* 30 F.3d 1115 (9th Cir.1994). The State in *Lind* argued it had a compelling interest in preventing candidates from being discouraged from running for public office and in preventing false charges against a candidate from infesting the electoral process. The Ninth Circuit concluded such interests are not compelling because the candidate and the State had the option of publicizing the fact that complaints filed with the Commission may be asserted by anyone, regardless of their merit. *See Lind,* 30 F.3d at 1119. The Ninth Circuit clearly stated that a state's attempt to exclude disfavored speech in order to promote speech the state deems valuable is precisely what the First Amendment seeks to prevent. *See id.* at 1119–20 ("[I]t is not the function of government to promote speech it deems more valuable and to suppress speech it deems less valuable."). Therefore, if the purpose of the Code of Fair Campaign Practices is to exclude disfavored speech in favor of speech the State deems appropriate for public political discourse, such interest would not be compelling. Indeed, under *Lind,* such an interest would run afoul of the First Amendment. Accordingly, the Code of Fair Campaign Practices is not justified by a compelling interest and, thus, fails strict scrutiny.

### III. *The Campaign Spending Commission Unconstitutionally Censured Plaintiff for Violations of the Code of Fair Campaign Practices*

■ Plaintiff was censured by the Commission for violating the second and third provisions of the Code. These provisions prohibit a candidate from using campaign materials that the Commission finds to have misrepresented, distorted or otherwise falsified facts about one's opponent and requires a candidate to refrain from using personal vilification, character defamation or other forms of scurrilous attacks against one's opponent or his family. Such regulations are aimed at the content of a candidate's speech. *See Mosley,* 408 U.S. at 95, 92 S.Ct. 2286.

Specifically, Plaintiff was censured for distributing a flier which indicated his opponent to be "in the pocket" of special interests. The flier indicated that Iwase was Chairman of the Senate Planning, Land and Water Use Committee at the same time that his law firm received one million dollars from a client for water and land use legal work. The Commission censured Plaintiff saying:

No evidence was provided that Senator Iwase's position in the senate resulted in any gain for himself or his law firm. Furthermore, the newspaper [citing in the subject flier] did not even hint at such a connection. The accusation of wrongdoing was not supported by any reliable facts.

The Commission concluded that the claims made in the aforementioned brochure were personal attacks and constituted personal vilification and character

defamation of candidate Randall Iwase and in violation of the Code of Fair Campaign Practices.

(Plaintiff's Motion, Exh. 4).

Under *New York Times*, 376 U.S. 254, 84 S.Ct. 710, Plaintiff's statements are deserving of constitutional protection. Prior to censuring Plaintiff, the Commission did not determine if Plaintiff's statements were made with actual malice. Indeed, the Commission did not conclude that the statements were false, only that Plaintiff failed to provide evidence that Iwase or his law firm gained through Iwase's dual roles. Because the Commission's action to censure Plaintiff for speech not shown by clear and convincing evidence to be made with actual malice, as required under *New York Times*, such censure violated Plaintiff's First Amendment rights to free speech.

## IV. *The Code of Fair Campaign Practices Is Unconstitutionally Overbroad*

█ Under the overbreadth doctrine, an individual is permitted to challenge a provision as facially invalid if the provision threatens to chill the speech of third parties not before the court. *See Board of Airport Commissioners v. Jews for Jesus*, 482 U.S. 569, 574, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987), *Lind*, 30 F.3d at 1122–23. The overbreadth doctrine is necessary to protect the First Amendment rights of speakers who may fear challenging the provision on their own. *See Brockett v. Spokane Arcades*, 472 U.S. 491, 503, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985). Whether a statute is overbroad is a question of law, *see Lind*, 30 F.3d at 1121, and the courts look not to the number of times the challenged provision has burdened constitutional rights but to the potential that First Amendment rights will be impaired. *See id.* at 1121 n. 6.

█ In order to support a facial overbreadth challenge, there must be a "realistic danger" that the provision will significantly compromise the speech rights involved. *See Board of Airport Commissioners*, 482 U.S. at 574, 107 S.Ct. 2568. A provision will not be invalidated on overbreadth grounds unless its overbreadth is both real and substantial, judged in relation to its plainly legitimate sweep, and the provision is not susceptible to a narrowing construction that would cure its constitutional infirmity. *See Broadrick v. Oklahoma*, 413 U.S. 601, 613, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *United States v. Austin*, 902 F.2d 743, 744 (9th Cir.), *cert. denied*, 498 U.S. 874, 111 S.Ct. 200, 112 L.Ed.2d 161 (1990). Accordingly, a law will not be facially invalidated simply because it has some conceivably unconstitutional applications. *See Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). There must be a substantial number of instances in which the provision will violate the First Amendment. *See New York State Club Ass'n v. City of New York*, 487 U.S. 1, 13, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988).

█ As this Court has already discussed, the Code prohibits speech that is protected under *New York Times* and its progeny. The statute permitting the Commission to censure candidates who violate the Code has no provision requiring the Commission to sanction only speech that was proven clearly and convincingly to have been made with actual malice. Indeed, the Code has the potential to chill even truthful speech made by candidates for public office.

Plaintiff produced the deposition testimony of the Executive Director of the Campaign Spending Commission, Robert Watada, who stated that there are circumstances in which truthful statements would violate Section 3 of the Code. (Plaintiff's Motion, Exh. 6 at 60–61 (Watada testified that the statements for which Plaintiff was censured could have been true)). Mr. Watada also testified that Section 5 of the Code, which prohibits appeals to prejudice based on certain characteristics of a candidate, such as race and sexual orientation, would be violated, for example, if a candidate truthfully reported that his opponent was a lesbian. (*Id.* at 40–41: "[Y]ou can say something which is correct, maybe the person is a lesbian, but [the candidate is] not going to use that as a basis in [his or her] campaign material . . .").

The State of Hawaii's attempts to regulate speech through the Code of Fair Campaign Practices has the potential of prohibiting or chilling a substantial range of protected speech. Accordingly, the Code is unconstitutionally overbroad on its face. *See also Vanasco v. Schwartz*, 401 F.Supp. 87 (E.D.N.Y.1975) (holding a New York statute to be overbroad since it was not limited to proscribing speech permitted to be sanctioned under the *New York Times* standard), *Montana Right to Life Assoc. v. Eddleman*, 999 F.Supp. 1380, 1385 (D.Mont.1998) (finding statute unconstitutionally overbroad to the extent it outlawed negligent misrepresentations of a candidate's record while upholding statute to the extent it prohibited the willful misrepresentation of a candidate's record); *Cf. Pestrak v. Ohio Elections Commission*, 926 F.2d 573, 577 (6th Cir.1991) (upholding state statute substantially limited to proscribing campaign speech known to be false and not protected by *New York Times* ).

## V. The State of Hawaii Cannot Constitutionally Compel a Candidate to Waive First Amendment Protections

██ Although constitutional rights may be waived, *see Schell v. Witek*, 218 F.3d 1017, 1023 (9th Cir.2000), courts are wary to find such a waiver. *See id.* One will be found only with clear evidence that the waiver was made knowingly, intelligently and voluntarily. *See id., Gete v. Immigration and Naturalization Service*, 121 F.3d 1285, 1293 (9th Cir.1997), *Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1394 (9th Cir.), *cert. denied*, 501 U.S. 1252, 111 S.Ct. 2892, 115 L.Ed.2d 1057 (1991); *see also D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972); *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (holding that the waiver of a constitutional right is "ordinarily an intentional relinquishment or abandonment of a known right or privilege"); *Leonard v. Clark*, 12 F.3d 885, 889 (9th Cir.1993). Waiver of a constitutional right is "not to be implied and is not lightly to be found." *Ostlund v. Bobb*, 825 F.2d 1371, 1373 (9th Cir.1987) (quoting *United States v. Provencio*, 554 F.2d 361, 363 (9th Cir.1977)). Additionally, the Supreme Court has instructed that lower courts must "indulge every reasonable presumption against waiver of fundamental constitutional rights." *Zerbst*, 304 U.S. at 464, 58 S.Ct. 1019 (footnote omitted), *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393, 57 S.Ct. 809, 81 L.Ed. 1177 (1937). The test for waiver of constitutional rights applies equally to criminal and civil cases. *See Fuentes v. Shevin*, 407 U.S. 67, 95 n. 31, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), *D.H. Overmyer*, 405 U.S. at 185, 187, 92 S.Ct. 775.

Here, the State of Hawaii has unconstitutionally established a method of regulating protected speech. The artifice used by the State to regulate speech effectively

places candidates for public office in the position of choosing between Scylla and Charybdis.[2] A candidate must either curb his protected rights of expression by signing and adhering to the Code of Fair Campaign Practices or engage in such protected activity and be branded by the State as a candidate who will not "uphold basic principles of decency, honesty and fair play." The State cannot constitutionally force its candidates for public office to choose between alternative perils. *See D.H. Overmyer,* 405 U.S. at 187, 92 S.Ct. 775 (requiring waiver of constitutional rights be made voluntarily); *Davies,* 930 F.2d at 1394–95; *see also Campbell v. Wood,* 18 F.3d 662, 680 (9th Cir.1994) (en banc) ("[T]he government may [not] cloak unconstitutional punishments in the mantle of 'choice'."); *Gete,* 121 F.3d at 1293 (stating that courts indulge every reasonable presumption against waiver); *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) (state may not condition public employment as a school teacher on the waiver of First Amendment rights to speak on matters of public concern), *Keyishian v. Board of Regents,* 385 U.S. 589, 605–06, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967) (same). The putative waiver of Plaintiff's rights, therefore, was not made voluntarily and will not preclude Plaintiff from asserting those rights before this Court.

### CONCLUSION

In accordance with the foregoing, it is HEREBY ORDERED that Plaintiff's Motion for Summary Judgment is GRANTED.

1. The Court declares that the Campaign Spending Commission's requirement that candidates for public office choose between either signing and adhering to the Code of Fair Campaign Practices or be identified by the State as a candidate who will not uphold basic principles of decency, honesty and fair play unconstitutionally abridges free speech. Candidates may feel compelled to adhere to the Code, which proscribes speech that is constitutionally protected under *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and its progeny.

2. Defendants Robert Y. Watada, Duane Black, Della Au, Andrea Low, Clifford Muraoka, and May Oshiro are enjoined to remove the Commission's censure of Plaintiff for his conduct in connection with his failure to adhere to the Code of Fair Campaign Practices.

There being no further issues before the Court, the case is hereby DISMISSED.

IT IS SO ORDERED.

---

**2.** In Homer's Odyssey, Odysseus had to overcome the obstacles of Scylla and Charybdis. Charybdis was a mythical whirlpool off the Sicilian coast, and was opposite the cave of Scylla. Scylla was a female sea monster who threatened to devour six crewmen if the ship approached too closely. Because these creatures lived on opposite shores of a narrow strait, it was supposedly impossible to navigate away from one peril without falling prey to the other. The goddess Circe instructed Odysseus: "Ah, shun the horrid gulf! by Scylla fly. 'Tis better six to lose, than all to die."