HOH CORPORATION, Appellant-Appellant, *v.* MOTOR VEHICLE INDUSTRY LICENSING BOARD, DEPARTMENT OF COMMERCE AND CONSUMER AFFAIRS, STATE OF HAWAII, Appellee-Appellee

NO. 11312

(CIV. NO. 85-1570)

MAY 11, 1987

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

136

OPINION OF THE COURT BY NAKAMURA, J.

The Motor Vehicle Industry Licensing Board found that HOH Corporation, a licensed distributor of motor vehicles, violated Hawaii Revised Statutes (HRS) § 437-28(b)(22)(C)[1] and ordered it to pay a fine of $2,000. HOH appealed to the Circuit Court of the First Circuit, asserting the finding was erroneous and the foregoing section of the statute, on its face and as applied, was constitutionally infirm. The circuit court affirmed the Board's decision and order without considering the claims of constitutional infirmity, but we conclude the court should have heard them. Thus, we vacate the

---

[1] HRS § 437-28(b)(22)(C) reads:

(b) Grounds for suspension, revocation, fine, or denial of issuance or renewal of a license. The board may, after notice and hearing as provided in chapter 91, and subject to appeal to the circuit court of the circuit in which the board has jurisdiction under the procedure and rules prescribed from time to time by the laws of the State or the applicable rules of the courts pertaining to appeals to circuit courts, suspend, revoke, fine, or deny the renewal of any license, or prior to such notice and hearing deny the issuance of any license if it finds that the applicant or holder, or any officer, director, general manager, trustee, partner, or stockholder owing more than ten per cent interest of such applicant or holder:

. . . .

(22) Being a manufacturer, factory branch, factory representative, distributor, distributor branch, or distributor representative:

. . . .

judgment and remand the case for proceedings not inconsistent with this opinion.

## I.

HOH Corporation is a distributor of motor vehicles manufactured by American Honda Motor Co., Inc. Its responsibilities as the Honda distributor in Hawaii include the selection of dealers and the assignment of sales territories. Brodie-Crackel, Inc. (Brodie) became a Honda dealer in 1973 when it was granted a franchise to sell Hondas in the Kaneohe area.[2] Dorothy and Clyde Gordon (the Gordons) were granted an exclusive, island-wide franchise to sell Honda motorcycles on Kauai in 1979.

In the middle of 1980, HOH sent every Honda dealer in Hawaii a "Retail Dealers Agreement." The form agreement proposed to grant each of them a "non-exclusive priviledge [sic] to sell [Honda vehicles] at retail" in a "primary area of responsibility." The agreements Brodie and the Gordons received, however, did not desig-

---

(C) Has attempted to or has canceled or failed to renew the franchise agreement of any dealer in this State without good faith, as defined herein. Upon such cancellation or failure to renew the franchise agreement, the party canceling or failing to renew the franchise agreement shall, at the dealer's option, either compensate the dealer at the fair market going business value for the dealer's capital investment, which shall include but not be limited to the going business value of the business, goodwill, property, and improvement owned or leased by the dealer for the purpose of the franchise, inventory of parts, and motor vehicles possessed by the dealer in connection with the franchise, plus reasonable attorney's fees incurred in collecting such compensation; provided such investment shall have been made with reasonable and prudent judgment for the purpose of the franchise agreement; or compensate the dealer for his damages including attorney's fees as aforesaid, resulting from the cancellation or failure to renew the franchise agreement. As used herein, "good faith" means the duty of each party to any franchise agreement fully to comply with that agreement, or to act in a fair and equitable manner towards each other[.]

[2] This written franchise agreement expired after one year, but Brodie remained a Honda dealer under an oral agreement. Brodie subsequently requested and was granted permission to sell Hondas in Waipahu rather than Kaneohe. HOH approved the move and granted Brodie an exclusive dealership covering "Waipahu on out." But this was not memorialized in a written agreement.

nate primary areas of responsibility. The dealers were nevertheless asked to sign and return the incomplete documents.

Brodie and the Gordons refused to do so, voicing objections to signing franchise agreements that did not assign sales territories. The distributor insisted "there [was] no leeway for negotiations" and repeated its earlier bidding. The recalcitrant dealers continued to resist the demand despite reminders that a dealer could only operate under a "Retail Dealers Agreement." The distributor, however, did not move directly to terminate the dealerships. But it allowed others to sell Honda motor vehicles in the territories that Brodie and the Gordons felt were primarily theirs.

When the two dealers found themselves in financial straits thereafter, they ascribed their plight to the enfranchisement of other Honda dealers in their sales territories. The financially strapped dealers eventually brought their dispute with HOH to the attention of the Department of Commerce and Consumer Affairs of the State of Hawaii (DCCA) for possible disciplinary action against the distributor under the Motor Vehicle Industry Licensing Act.

DCCA investigated the allegations of misconduct levelled at the distributor and decided there were grounds for disciplinary action. The complaint filed with the Motor Vehicle Industry Licensing Board on behalf of the two dealers charged in part that HOH violated the provisions of HRS § 437-28(b)(22) when it "attempted to coerce [Brodie] and the Gordons to enter into new franchise agreements materially different from their valid existing agreements by threatening to cancel or failing to renew their franchises [in the event the dealers] fail[ed] to sign the new agreements," by "threatening to award Honda franchises to other persons," and by failing to renew their franchise agreements "without good faith." *See* HRS § 437-28(b)(22).

The Motor Vehicle Industry Licensing Board referred the matter to a hearings officer, who conducted a full-scale evidentiary hearing and submitted a report. In her fifty-page report to the Board, the hearings officer recounted the relevant facts in detail and set out her proposed findings and conclusions. And she recommended that the charges alleging violations of HRS § 437-28(b)(22)(A) and (B) be dismissed, that the charge of a violation of

HRS § 437-28(b)(22)(C) be sustained, and that HOH be fined $2,000, the maximum imposable under the licensing law for violations of HRS § 437-28.

The Board adopted the hearings officer's proposed findings and conclusions as its own and ordered HOH to pay a fine of $2,000 after considering the distributor's exceptions to the report. Invoking applicable provisions of the Hawaii Administrative Procedure Act, HRS chapter 91, HOH appealed the agency determination to the circuit court.

In the Statement of Case submitted concurrently with the designation of the record on appeal, as required by Rule 72(e) of the Hawaii Rules of Civil Procedure (HRCP),[3] HOH denied any statutory violation and averred for the first time that the pertinent portion of the statute regulating the conduct of motor vehicle distributors was unconstitutional, facially and as applied. DCCA's plea in response to these averments of constitutional infirmity was that HOH's failure to raise the issues before the Board precluded the court from considering them on appeal. The court agreed with HOH that the regulatory board could not have adjudicated the constitutionality of the statute from which it derived its power to act. But the court also agreed with DCCA that judicial review of the agency determination should be "confined to issues properly raised in the record of the administrative proceedings below." Inasmuch as the constitutional issues were not matters of record, the court affirmed the Board's decision and order without passing on them.

II.

The Honda distributor appeals to this court, arguing the circuit court erred in refusing to consider its constitutional claims. It urges that the state law regulating motor vehicle distributors and dealers has been preempted by federal legislation, HRS § 437-28(b)(22)(C)

---

[3] HRCP 72(e) reads:

Statement of Case. The appellant shall file in the circuit court concurrently with the filing of appellant's designation, a short and plain statement of the case and a prayer for relief. Certified copies of such statement shall be served forthwith upon every appellee. The statement shall be treated, as near as may be, as an original complaint and the provision of these rules respecting motions and answers in response thereto shall apply.

is void because its prohibitions are not clearly defined, and the section was applied to inhibit commercial free speech.[4] We would have to agree that when the circuit court considered the appeal from the decision and order of the Motor Vehicle Industry Licensing Board, it should have examined HOH's constitutional claims too and ruled on them if it could.

A.

We cannot fault the circuit court's declaration that "[t]he Board [was] not empowered to adjudicate the constitutionality of its governing statute . . . . " Although an administrative "agency may always determine questions about its own jurisdiction [it] generally lacks power to pass upon constitutionality of a statute. The law has long been clear that agencies may not nullify statutes. *Public Utilities Commission v. United States,* 355 U.S. 534, 539 (1958); *Oestereich v. Selective Service Board,* 393 U.S. 233, 242 [(1968)] (Harlan, J., concurring); *Johnson v. Robison,* 415 U.S. 361, 368 (1974); *Weinberger v. Salfi,* 422 U.S. 749, 765 (1975); *Moore v. City of East Cleveland,* 431 U.S. 494, 526 (1977) (Burger, C.J., dissenting)." 4 K. Davis, *Administrative Law Treatise* § 26:6, at 434 (2d ed. 1983).

Nor do we have reason to question the pronouncement that judicial review of an agency determination must be "confined to issues properly raised in the record of the administrative proceedings below." For under the Hawaii Administrative Procedure Act, "[t]he review [is] conducted by the appropriate court without a jury and [is] confined to the record[.]" HRS § 91-14(f). Still, it does not necessarily follow that the constitutional issues posed by the motor vehicle distributor were not cognizable by the circuit court.

In the Statement of Case submitted to the circuit court, HOH averred that HRS § 437-28(b)(22)(C) is "vague, ambiguous, and overbroad" and that it was applied in violation of state and federal constitutional provisions. The appellant thus challenged the consti-

---

[4] HOH's Statement of Case, which by virtue of HRCP 72 is treated "as near as may be, as an original complaint," did not allege a violation of the Supremacy Clause of the United States Constitution. Thus, we do not see that a claim of federal preemption was properly raised in the circuit court.

tutionality of legislative, as well as administrative, action. The circuit court undoubtedly could have entertained both claims.

The "delicate and difficult office [of ascertaining] whether ... legislation is in accordance with, or in contravention of, [constitutional] provisions" is confided to the courts. *United States v. Butler*, 297 U.S. 1, 63 (1936). "[U]nder our frame of government, no other place is provided where the citizen may be heard to urge that the law [as written by the legislature] fails to conform to the [constitutional] limits set upon the use of [governmental] power." *Id.* at 67. And the several circuit courts of the State have power to decide whether a provision of the Motor Vehicle Industry Licensing Act, on its face, is unconstitutional. For they "have jurisdiction, except as otherwise expressly provided by statute, of: ... [c]ivil actions and proceedings." HRS § 603-21.5.

The circuit courts are vested also with authority to determine whether administrative action has transgressed constitutional limits. The Administrative Procedure Act allows a circuit court, "[u]pon review of the record [to] reverse or modify the decision and order [of the agency] if the substantial rights of the [appellant] may have been prejudiced because the administrative findings, conclusions, decisions, or orders, are ... [i]n violation of *constitutional* or statutory provisions[.]" HRS § 91-14(g)(1) (emphasis added).

### B.

The circuit court chose not to exercise its jurisdiction to review the constitutionality of HRS § 437-28(b)(22)(C) as written and as applied on grounds that judicial review is "confined to issues properly raised in the record of the administrative proceedings below." We would not fault the court if the appellant's claims were only that "the administrative findings, conclusions, decision[], [and] order[] are ... [c]learly erroneous in view of the reliable, probative, and substantial evidence on the whole record[,] or [a]rbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion." *See* HRS § 91-14(g)(5) and (6).

But the appellant further asserted HRS § 437-28(b)(22)(C) is unconstitutional on its face and was applied in violation of constitu-

tional provisions. "Where the statute is attacked on its face, the agency decision will rarely aid in the ultimate judicial resolution of the [claim]." B. Schwartz, *Administrative Law* § 8.37, at 519 (2d ed. 1984). Whether the statute is vague or not is a question of law which ordinarily can be resolved by examining the manifestation of legislative policy. Where the challenge is to the statute as administered, the agency's findings, conclusions, decision and order are measured against constitutional standards. And the issues must be framed within the factual context of the record made before the agency. *See* HRS § 91-14(g). "When determination of the constitutional issue depends on factual determinations, they should be made first by the administrative officials who are especially equipped to inquire, in the first instance, into the facts." B. Schwartz, *supra* (footnote omitted).

Yet, constitutionality or not in the particular circumstances is a legal question originally cognizable in the circuit court. *See* HRS §§ 603-21.5 and 91-14(g)(l). Were it not so, there would be no judicial review of the pertinent legislative and administrative actions. The administrative agency is not empowered to pass on the validity of the statute; nor is it qualified to adjudicate the propriety of its own action.

## C.

As we noted, HOH, as one "aggrieved by a final decision and order in a contested case," sought judicial review of the administrative action by filing a notice of appeal in the circuit court. *See* HRS § 91-14(a). Concurrently with the designation of appeal, the appellant filed a Statement of Case as directed by HRCP 72, urging for the first time that the administrative action as well as the supporting legislation should be invalidated on constitutional grounds. A cursory reading of HRS § 91-14(f), which mandates that "[t]he review shall be conducted by the appropriate court . . . and shall be confined to the record," could leave one with the impression that the request for judicial review of the legislative action was out of order. But in our view the request, though made concomitantly with the appeal from the administrative agency, was timely and appropriate.

One seeking judicial review of administrative action, of course, would invoke HRS § 91-14 and the procedures outlined there and in HRCP 72. HOH did as directed, but prayed that the court subject the underlying legislation to constitutional scrutiny too. We think this was proper, since "nothing in [HRS § 91-14] shall be deemed to prevent resort to other means of review, redress, [or] relief . . . provided by law." HRS § 91-14(a). That the request was coupled with another for relief expressly authorized by HRS § 91-14 should not preclude the circuit court from considering the request and affording redress or relief if warranted. *Cf. Head-On Collision Line, Inc. v. Kirk,* 36 Ill. App. 3d 263, 268, 343 N.E.2d 534, 538 (1976) ("Constitutional questions may be raised for the first time in a complaint for administrative review."); *Perez v. Webb,* 533 S.W.2d 650, 655 (Mo. Ct. App. 1976) ("That judicial review of administrative proceedings 'may' include constitutional questions at the circuit court level, is no longer open to doubt.").

The appellant's decision to challenge the statute's facial validity at the same time it challenged the administrative action promoted the judicious use of scarce judicial resources. Moreover, the possibility of constitutional questions being decided in a vacuum was extinguished thereby. Though we recognize "the agency decision will rarely aid in the ultimate judicial resolution" of a challenge of the law as written, there are cases where even this question "will be better framed by the structure of a factual context." B. Schwartz, *supra* (footnote omitted). For example, if preemption had been properly raised in the circuit court, coverage under the challenged state statute and the related federal act would have been an issue. And the resolution of one of the constitutional questions posed for judicial determination would have been aided by facts developed in the agency hearing. *See W.E.B. DuBois Clubs v. Clark,* 389 U.S. 309, 312 (1967).

The judgment of the circuit court is vacated, and the case is remanded for proceedings not inconsistent with this opinion.

*Randolph R. Slaton (Williams, Slaton & Yamada,* of counsel) for appellant.

*Winfred K.T. Pong (Susan Tamura Sato* on the brief), Deputy Attorneys General, for appellee.