LAW LIBRARY

**NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

NO. 29276

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

2010 JUN 21 AM 8:07 FILED

WAYLAND LUM and RAYNETTE LUM,
Appellants-Appellants,
v.
ZONING BOARD OF APPEALS OF THE CITY AND COUNTY
OF HONOLULU; DAVID J. MINKIN, in his official capacity
as Chairperson of the Zoning Board of Appeals, City and
County of Honolulu; HENRY ENG, in his official capacity
as Director of the Department of Planning and
Permitting, City and County of Honolulu, State
of Hawaii; DAVID G. NOTTAGE and NANCY W. NOTTAGE,
Appellees-Appellees,
and
CARL A. FARDEN, III and ARMELLE L. FARDEN,
Appellees

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 07-1-2072)

SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., Foley and Leonard, JJ.)

In this secondary agency appeal, Appellants-Appellants Wayland and Raynette Lum (the Lums) appeal from the Judgment filed on May 6, 2008 in the Circuit Court of the First Circuit[1] (circuit court). The circuit court entered judgment in favor of the Zoning Board of Appeals of the City and County of Honolulu (ZBA) and against the Lums. The circuit court entered the Judgment pursuant to its May 6, 2008 "Order Denying Appellants [the Lums'] Appeal and Affirming Appellee [ZBA's] Decision."

On appeal,[2] the Lums contend that the reliance of the circuit court and Appellee-Appellee Henry Eng, in his official capacity as Director (Director) of the Department of Planning and

---

[1] The Honorable Eden Elizabeth Hifo presided.

[2] Counsel for all parties are cautioned that Hawai'i Rules of Appellate Procedure Rule 28(b)(3) requires that the statement of the case, including any introduction section therein, must have "record references supporting each statement of fact or mention of court or agency proceedings."

Permitting of the City and County of Honolulu, State of Hawai'i, upon Revised Ordinances of Honolulu 1990 (ROH), Chapter 21 (Land Use Ordinance), § 21-2.90-2(c) (2003) to modify the yard setback requirements based on a previously issued conditional use permit (CUP) was arbitrary, capricious, and based upon a manifestly erroneous interpretation of § 21-2.90-2(c) because

(1) no application for a minor modification of the CUP was pending, and there was no notice or opportunity for the Lums to be heard on the issue;

(2) the previously issued CUP was invalid to the extent that it sought to jointly develop a single "zoning lot" together with two right-of-way lots[3] that, by definition, were not themselves "zoning lots," in violation of ROH § 21-5.380(a) (1999); and

(3) even assuming, _arguendo_, that the Director could modify the yard setback requirement pursuant to ROH § 21-2.90-2(c), notwithstanding the provisions of ROH § 21-5.380(a), the Director's approval of the minor modification was arbitrary, capricious, and an abuse of discretion because he conflated the requirements for approving a variance, set forth in the Revised Charter of the City and County of Honolulu (RCCCH) § 6-1517 (2001), with the requirements for a minor modification of a CUP, set forth in ROH § 21-2.90-2(a) & (b) (2003), none of which were satisfied.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we conclude the Lums' appeal is without merit.

---

[3] The three lots were originally owned by Carl A. Farden, III and Armelle L. Farden (the Fardens), who, during the course of the litigation, sold the lots to David G. Nottage and Nancy W. Nottage (the Nottages). On March 13, 2008, the circuit court approved a stipulation by which the Nottages were substituted as party Appellees for the Fardens.

2

(1) The Director's August 1, 2006 Findings of Fact, Conclusions of Law, and Decision and Order (Director's D&O) approving a modification to the CUP for joint development (CUP-JD) *sua sponte* did not deprive the Lums of the opportunity to prepare testimony and legal argument relevant to CUP issues.[4]

ROH Chapter 21, § 21-2.90-1 (2003), which sets forth application requirements for CUPs, grants the Director the discretion to hold public hearings when the application for a CUP is for a meeting facility, day-care facility, or school. James Pierson (Pierson), the Director's representative,[5] accurately summarized the content of § 21-2.90-1 before the ZBA, pointing out that § 21-2.90-1 did not require a hearing for CUP-JD modification:

> THE WITNESS: We can't require a hearing just because we have people who may disagree. The hearing requirements are specified by law.
>
> For conditional uses, a conditional use major permit request all requires a public hearing. For a conditional use minor permit, there's never a public hearing except for those three exceptions I named earlier [meeting facility, day-care facility, and school] where the director has discretion to require one, largely based on input from the neighborhood.
>
> So for a conditional use permit for a joint development, as a matter of law, there is no public hearing requirement nor can the director impose a public hearing requirement.

Additionally, we note that the Director afforded the Lums the opportunity to present testimony at the hearing on the

_____

[4] The Nottages respond that the Lums failed to raise this issue at the administrative level and therefore it is not properly before this court. However, the circuit court may review constitutional issues raised for the first time on appeal pursuant to Hawaii Revised Statutes (HRS) § 91-14(g) (1993). HOH Corp. v. Motor Vehicle Indus. Licensing Bd., Dep't of Commerce & Consumer Affairs, 69 Haw. 135, 143, 736 P.2d 1271, 1276 (1987). Under HOH Corp., the Lums' due process issue was properly before the circuit court and therefore properly before this court on appeal.

[5] Pierson testified that he was "a Planner VI assigned to the zoning regulations and permits branch of the land use permits division." The record indicates that Pierson processed the Fardens' variance application and suggested the CUP-JD modification as a means of remedying the encroachment issues.

3

Fardens' variance application. There was no violation of the Lums' due process rights.

(2) The CUP-JD did not violate ROH § 21-5.380 (1999) for failure to include two zoning lots, as contended by the Lums.[6] Section 21-5.380(a) provides that "[w]henever two or more zoning lots are developed in accordance with the provisions of this section, they shall be considered and treated as one zoning lot." The Lums argue that the plain language of this section dictates that a joint development requires two or more zoning lots. The Lums further argue that the definition of "zoning lot" under ROH § 21-10.1 (2003) expressly excludes right-of-way lots and because two of the three lots used in the joint development are right-of-way lots, the CUP-JD violates § 21-5.380(a).

We note that the definition of "joint development" permits "the development of two or more adjacent subdivision lots." ROH § 21-10.1. We further note that subdivision lots include right-of-way lots. Accordingly, we conclude that the CUP-JD did not violate ROH § 21-5.380, which permits an owner of adjacent lots to pursue joint development of the lots by applying for a CUP.

(3) The Director's D&O did not erroneously conflate the standard for a variance under RCCCH § 6-1517[7] with the

---

[6] ROH § 21-5.380 sets forth the requirements for the joint development of adjacent lots.

[7] RCCCH § 6-1517, Zoning Variances, provides:

The director shall hear and determine petitions for varying the application of the zoning code with respect to a specific parcel of land and may grant such a variance upon the ground of unnecessary hardship if the record shows that (1) the applicant would be deprived of the reasonable use of such land or building if the provisions of the zoning code were strictly applicable; (2) the request of the applicant is due to unique circumstances and not the general conditions in the neighborhood, so that the reasonableness of the neighborhood zoning is not drawn into question; and (3) the request, if approved, will not alter the essential character of the neighborhood nor be contrary to the intent and purpose of the zoning ordinance. Prior to the granting of any variance, the director shall hold a public hearing thereon. The director shall specify the particular evidence which supports

(continued...)

4

alleged requirements for a minor modification of a CUP, as set forth in ROH § 21-2.90-2(a) and (b). Nor did the Director's D&O fail to demonstrate how these modification requirements were met.

ROH § 21-2.90-2(c) does not require an independent finding that the proposed modification satisfies the criteria of sub-parts (a) and (b).[8] ROH § 21-2.90-2 (c) provides:

> Sec. 21-2.90-2 **General requirements.**
>
> . . . .
>
> (c)     The director may grant conditional use permits by modifying application of the sign regulations; district regulations relating to yards, landscaping, and lot dimensions; and parking requirements for uses which have an unusual peak-hour parking demand. <u>No such modification shall be made unless the proposed conditional use otherwise meets the requirements of subsections (a) and (b)</u>. At no time may the director modify the minimum standards for a specific conditional use.

(Emphasis added.) The Lums contend the above underlined sentence requires that a proposed modification meet the criteria of subparts (a) and (b) for approval. The Nottages and the Director contend the conditional use, not the modification, is subject to the requirements of subparts (a) and (b).

The record supports this latter interpretation. Pierson testified before the ZBA that a modification under subpart (c) is not subject to the criteria of subparts (a) and (b):

> Q [Director's Counsel]   I'm going to show you Exhibit A of the [D]irector's position, page eight. And this is basically what you've just read; is that correct?
>
> A [Pierson]     Correct except the section that I read was Subsection C which is not -- oh, you're right, it's there. I'm sorry. Yes.
>
> Q      Okay.
>
> A      It's the first quotation.

---

[7](...continued)
the granting of a variance.

(Footnote omitted.)

[8]   ROH § 21-2.90-2 sets forth the general requirements for conditional use permits and modifications.

Q       And on that particular page in that exhibit it
indicates the four conditions under A and the [D]irector
found that it met all four of those conditions?

A       Yeah.  Well, actually we went further here than we're
required to do, I believe.  But what Subsection C requires
is that the conditional use itself meets those criteria.
And that finding was made three years prior to this when the
[CUP] was granted.  And typically when we grant
modifications to conditional use, we don't go through these
findings because that had already been done when the
conditional use was provided.

We conclude that the Director's interpretation is reasonable, and we accordingly defer to it.  Colony Surf, Ltd. v. Dir. of Dep't of Planning & Permitting, 116 Hawai'i 510, 514, 174 P.3d 349, 353 (2007) ("[A]n administrative agency's interpretation of the ordinance that it is responsible for implementing is normally accorded great weight, [except] when the agency's interpretation conflicts with or contradicts the manifest purpose of the ordinance it seeks to implement.").

Therefore,

IT IS HEREBY ORDERED that the Judgment filed on May 6, 2008 in the Circuit Court of the First Circuit is affirmed.

DATED:  Honolulu, Hawai'i, June 21, 2010.

On the briefs:

David Schulmeister
(Cades Schutte)
for Appellants-Appellants.

Duane W.H. Pang
Jesse K. Souki
Dawn E. Takeuchi-Apuna,
Deputies Corporation Counsel,
for Appellee-Appellee Henry Eng.

Dennis W. King
John Winnicki
(Deeley, King & Pang)
for Appellees-Appellees
David G. Nottage and Nancy
C. Nottage.

Chief Judge

Associate Judge

Associate Judge