257 P.3d 213

ALAKAʻI NA KEIKI, INC.,
Plaintiff–Appellant,

v.

Patricia HAMAMOTO, in her official capacity as Superintendent of Education, Defendant–Appellee

and

Does 1–10, Defendants.

No. 29742.

Intermediate Court of Appeals of Hawaiʻi.

May 24, 2011.

Perry Confalone, Joseph A. Ernst (Carlsmith Ball LLP), on the briefs, for Plaintiff–Appellant.

Deirdre Marie–Iha, Deputy Solicitor General, on the briefs, for Defendant–Appellee.

FOLEY, Presiding J., FUJISE, J., and Circuit Judge Border in Place of NAKAMURA, C.J., and LEONARD, J., Both Recused.[1]

Opinion of the Court by FOLEY, J.

Plaintiff–Appellant Alaka'i Na Keiki, Inc. (ANK) appeals from the "Judgment in Favor of Defendant Patricia Hamamoto in Her Official Capacity as Superintendent of Education and Against Plaintiff Alaka'i Na Reiki, Inc., as to All Claims Asserted in the Second Amended Complaint" (Judgment) filed on March 4, 2009 in the Circuit Court of the First Circuit[2] (circuit court). The circuit court entered the Judgment pursuant to the "Order Granting Defendant's Motion for Judgment on the Pleadings or in the Alternative for Summary Judgment Filed on May 9, 2008," filed October 29, 2008, and the "Order Denying Plaintiff Alaka'i Na Reiki, Inc.'s Motion for Summary Judgment Filed on May 9, 2008," filed October 27, 2008.

## I.

In October 2004, the State of Hawai'i Department of Education (DOE) issued a Request for Proposals (RFP) to provide intensive instructional support services to students with educational disabilities. The RFP was "issued under the provisions of the Hawaii Revised Statutes [ (HRS) ], Chapter 103F [ (Chapter 103F) ] and its administrative rules." DOE reserved the right to reject proposals for a variety of reasons described in the RFP. An applicant could protest the awarding of a contract, but only for the agency's failure to follow the procedures and rules established by Chapter 103F or for failure to follow "any procedure, requirement, or evaluation criterion in [the RFP]." The proposals were evaluated according to five categories; however, only four of the categories earned points. To be eligible for the contract, applicants had to receive a score of 70 points or better out of a possible score of 100 points.

---

1. On February 11, 2010, when the panel was assigned for this case, Associate Judges Reifurth and Ginoza had not been appointed to this court and thus a circuit court judge was assigned to sit on the panel.

2. The Honorable Gary W.B. Chang presided.

ANK submitted a proposal in January 2005. DOE notified ANR on March 31, 2005 that its proposal failed to meet the minimum score of 70 to be considered in the pool of providers. ANR protested DOE's decision. On April 29, 2005, DOE informed ANR that all proposals were being re-scored. Upon re-scoring, ANR still failed to meet the minimum score. ANR filed an amended notice of protest on May 18, 2005. On May 31, 2005, ANK met with DOE to informally discuss resolution of its protest and discovery procedures. During June and July of 2005, several requests for information and discovery were made by ANK and denied by DOE. On July 18, 2005, ANK again filed a protest, with exhibits, documenting alleged errors in the evaluation. On July 27, 2005, DOE Acting Educational Specialist Marilyn Jakeway sent a response, to which ANK replied on August 2, 2005. DOE Procurement and Contracts Specialist Christian Butt denied ANK's protest on August 9, 2005.

ANK then submitted a request for reconsideration on August 16, 2005. On August 25, 2005, DOE Assistant Superintendent Rae Loui rejected the request, "find[ing] no error on the part of the purchasing agency." Thus, stated Loui, "[t]he findings of the purchasing agency in its decision on the protest are affirmed and upheld. The decision of the head of the purchasing agency is upheld."

ANK filed a complaint in the circuit court on September 16, 2005 contesting DOE'S decision. ANK filed a First Amended Complaint on September 20, 2005 and a Second Amended Complaint on November 13, 2006. The circuit court entered judgment in favor of DOE and against ANK, and ANK timely appealed.

On appeal, ANK contends the circuit court erred in its

(1) March 20, 2006 "Order Granting in Part and Denying in Part Defendant–Appellee's Motion to Dismiss the First Amended Complaint Filed on October 6, 2005" (March 20, 2006 Order) when the court found that judicial review under HRS Chapter 91 was precluded by HRS § 103F–504 (Supp.2010) because courts have express and inherent power to review agency action under the Hawai'i Constitution and HRS § 603–21.9 (1993); and

(2) October 27, 2008 "Order Denying Plaintiff Alaka'i Na Reiki's Motion for Summary Judgment Filed May 9, 2008" (Order Denying ANK's MSJ) and (3) October 29, 2008 "Order Granting Defendant's Motion for Judgment on the Pleadings or in the Alternative for Summary Judgment Filed on May 9, 2008" (Order Granting Hamamoto's MSJ) because HRS Chapter 103F was unconstitutional, the court had authority to review DOE's decision and underlying actions, DOE was liable in tort due to violations of the statute and its administrative rules, there was a material issue of fact regarding negligent scoring as evidenced by deposition testimony, and the action clearly was not moot.[3]

ANK asks that we (1) vacate the circuit court's March 20, 2006 Order, Order Denying ANK's MSJ, and Order Granting Hamamoto's MSJ and direct the court to enter partial summary judgment in favor of ANK; (2) invalidate HRS Chapter 103F as unconstitutional or, in the alternative, (3) declare that DOE acted unlawfully; (4) enjoin DOE and all contracting agencies from further procurement activities under HRS Chapter 103F pursuant to Count IV (Injunctive Relief) pending the development of interim rules by the court to safeguard constitutional protections and appointment of a special master to review bid protests and make recommended decisions to the circuit court regarding final disposition of protests pending legislative cure of the statute; (5) remand to the circuit court on the issues of damages, legal and equitable remedies pursuant to the tort, declaratory relief, and judicial review claims set

---

3. ANK also presents separately from its two Points of Error five "Issues Presented," but does not explain their relationship to the Points of Error. If these issues were intended as points of error, ANK's counsel is advised that Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(4) was not followed and that "[p]oints not presented in accordance with this section will be disregarded, except that the appellate court, at its option, may notice a plain error not presented." HRAP Rule 28(b)(4). We address the "Issues Presented" only insofar as they appear in the argument. ANK's counsel is warned that future non-compliance with HRAP Rule 28(b)(4) may result in sanctions against them.

out in Counts I, II, and III; and (6) award attorneys' fees, costs, and other relief to ANK as permitted by law.

## II. STANDARDS OF REVIEW

### A. Summary Judgment

On appeal, the grant or denial of summary judgment is reviewed *de novo*. *See State ex rel. Anzai v. City and County of Honolulu*, 99 Hawai'i 508, [515], 57 P.3d 433, [440] (2002); *Bitney v. Honolulu Police Dep't*, 96 Hawai'i 243, 250, 30 P.3d 257, 264 (2001).

[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Kahale v. City and County of Honolulu*, 104 Hawai'i 341, 344, 90 P.3d 233, 236 (2004) (citation omitted).

*Nuuanu Valley Ass'n v. City & County of Honolulu*, 119 Hawai'i 90, 96, 194 P.3d 531, 537 (2008).

### B. Statutory Interpretation

▮▮▮ The interpretation of a statute is a question of law that is reviewed de novo.

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists [.]

In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

[The appellate] court may also consider the reason and spirit of the law, and the cause which induced the legislature to enact it [ ] to discover its true meaning. Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another.

*Morgan v. Planning Dep't, County of Kauai*, 104 Hawai'i 173, 179–80, 86 P.3d 982, 988–89 (2004) (citations and internal quotation marks omitted).

[W]here an administrative agency is charged with the responsibility of carrying out the mandate of a statute which contains words of broad and indefinite meaning, courts accord persuasive weight to administrative construction and follow the same, unless the construction is palpably erroneous.

*Id.* at 180, 86 P.3d at 989 (citing *Ka Pa'akai O Ka'Aina v. Land Use Comm'n, State of Hawai'i*, 94 Hawai'i 31, 41, 7 P.3d 1068, 1078 (2000)). Stated differently:

Where an agency is statutorily responsible for carrying out the mandate of a statute which contains broad or ambiguous language, that agency's interpretation and application of the statute is generally accorded judicial deference on appellate review. *Vail v. Employees' Retirement System*, 75 Haw. 42, 59, 856 P.2d 1227, 1237 (1993). However, an interpretation by an agency of a statute it administers is not entitled to deference if the interpretation is plainly erro-

neous and inconsistent with both the letter and intent of the statutory mandate. *Kahana Sunset Owners v. County of Maui*, 86 Hawaiʻi 66, 72, 947 P.2d 378, 384 (1997).

*TIG Ins. Co. v. Kauhane*, 101 Hawaiʻi 311, 321, 67 P.3d 810, 820 (App.2003) (brackets and internal quotation marks omitted).

*Haole v. State of Hawaiʻi*, 111 Hawaiʻi 144, 149–50, 140 P.3d 377, 382–83 (2006) (some brackets in original and some added).

### C. Legislative Intent

■■■ The appellate court "derives legislative intent primarily from the language of statute and follows the general rule that in the absence of clear legislative intent to the contrary, the plain meaning of the statute will be given effect." *State v. Akina*, 73 Haw. 75, 78, 828 P.2d 269, 271 (1992).

### D. Mootness

■■■ "It is axiomatic that mootness is an issue of subject matter jurisdiction. Whether a court possesses subject matter jurisdiction is a question of law reviewable *de novo.*" *Hamilton ex rel. Lethem v. Lethem*, 119 Hawaiʻi 1, 4–5, 193 P.3d 839, 842–43 (2008) (internal quotation marks and citation omitted).

### E. Constitutional Questions

The Hawaiʻi Supreme Court stated in *In re Guardianship of Carlsmith*, 113 Hawaiʻi 236, 151 P.3d 717 (2007):

[The appellate court] reviews questions of constitutional law *de novo* under the right/wrong standard and, thus, exercises its own independent constitutional judgment based on the facts of the case. [The appellate court] as a general matter, has long adhered to the proposition that (1) legislative enactments are presumptively constitutional; (2) a party challenging a statutory scheme has the burden of showing unconstitutionality beyond a reasonable doubt; and (3) the constitutional defect must be clear, manifest, and unmistakable.

*Id.* at 239, 151 P.3d at 720 (internal quotation marks and citations omitted).

## III.

### A. UNDER THE HAWAIʻI CONSTITUTION, IT IS CONSTITUTIONAL FOR THE LEGISLATURE TO PRECLUDE JUDICIAL REVIEW OF CHAPTER 103F ADMINISTRATIVE PROTEST PROCEEDINGS.

ANK contends that Chapter 103F is unconstitutional because it gives DOE final adjudicatory power over agency protests.

Chapter 103F governs contracts made by state agencies for health and human services. HRS § 103F–101 (Supp.2010). Specifically, HRS §§ 103F–501 (Supp.2010), 103F–502 (Supp.2010), and 103F–504 provide the statutory requirements for protesting a contract award. The statutes provide in relevant part:

§ 103F–501 Protested awards. (a) A person who is aggrieved by an award of a contract may protest a purchasing agency's failure to follow procedures established by this chapter [.]

. . . .

(b) The protest shall be submitted to the head of the purchasing agency, in writing, within five working days after the postmark date on the notice of award.

(c) The head of the purchasing agency, or a designee, may settle and resolve a protest by one or more of the following means:

(1) Amending or canceling a request for proposal;

(2) Terminating the contract which was awarded;

(3) Initiating a new process to award a contract;

(4) Declaring the contract null and void from the time of its award; or

(5) Affirming the purchasing agency's contract award decision.

This authority shall be exercised in accordance with rules adopted by the policy board.

(d) If the protest is not resolved by mutual agreement, the head of the purchasing agency, or a designee, shall

promptly issue a decision in writing. The decision shall:

(1) State the reasons for the action taken; and

(2) Inform the protesting person of the protester's right to reconsideration as provided in this part.

A copy of the written decision shall be mailed or otherwise furnished to the person who initiated the protest.

(e) A decision under subsection (d) shall be final and conclusive unless a request for reconsideration is submitted to the chief procurement officer under section 103F-502.

§ 103F-502 **Right to request reconsideration.** (a) A request for reconsideration of a decision of the head of the purchasing agency under section 103F-501 shall be submitted to the chief procurement officer not later than five working days after the receipt of the written decision, and shall contain a specific statement of the factual and legal grounds upon which reversal or modification is sought.

. . . .

(c) The chief procurement officer may uphold the previous decision of the head of the purchasing agency or reopen the protest as deemed appropriate.

(d) A decision under subsection (c) shall be final and conclusive.

§ 103F-504 Exclusivity of remedies. The procedures and remedies provided for in this part, and the rules adopted by the policy board, shall be the exclusive means available for persons aggrieved in connection with the award of a contract to resolve their concerns.

■ "It is well-settled that the right to appeal is purely statutory and exists only when given by some constitutional or statutory provision." *Burke v. County of Maui*, 95 Hawai'i 288, 289, 22 P.3d 84, 85 (2001). "When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself." *Bhakta v. County of Maui*, 109 Hawai'i 198, 208, 124 P.3d 943, 953 (2005) (internal quotation marks and citations omitted).

HRS §§ 103F-501 and 103F-502 provide the steps for an aggrieved party to protest a contract award. The party submits a letter of protest to the head of the purchasing agency, who can respond in one of five ways. The aggrieved party then has the option to submit a request for reconsideration to the chief procurement officer, who can either confirm the previous decision or reopen the protest. According to HRS § 103F-504, this protest procedure "shall be *the exclusive means* available for persons aggrieved in connection with the award of a contract to resolve their concerns." (Emphasis added.) Thus, by its terms, Chapter 103F does not allow for judicial review.

■ ANK acknowledges that, under Chapter 103F, the Hawai'i Legislature (Legislature) clearly intended for DOE to be the final arbiter in contract award protests. However, ANK claims that giving DOE the power to be the final arbiter violates the separation of powers doctrine and, therefore, Chapter 103F is unconstitutional. We disagree.

■ The separation of powers doctrine preserves the checks and balances of our system of government, where "sovereign power is divided and allocated among three co-equal branches." *Hawaii Insurers Council v. Lingle*, 120 Hawai'i 51, 69, 201 P.3d 564, 582 (2008) (internal quotation marks and citation omitted). "The doctrine provides that *a department may not exercise powers not so constitutionally granted,* which from their essential nature, do not fall within its division of governmental functions, unless such powers are properly incidental to the performance by it of its own appropriate functions." *Id.* at 70, 201 P.3d at 583 (internal quotation marks, citation, and ellipsis omitted; emphasis added).

■ The right to appeal is purely statutory and the Hawai'i Constitution vests the Legislature with legislative power, which "is defined as the power to enact laws and to declare what the law shall be. Under this grant of authority, the [L]egislature has the power to establish the subject matter jurisdiction of our state court system." *Sherman*

*v. Sawyer,* 63 Haw. 55, 57, 621 P.2d 346, 348 (1980) (citation omitted); *see* Haw. Const. art. VI, § 1 ("The judicial power of the State shall be vested in one supreme court [and] one intermediate appellate court.... The several courts shall have original and appellate jurisdiction *as provided by law* ....") (Emphasis added.)

The Legislature, in enacting Chapter 103F, determined that the judiciary had no power to review procurement grievance procedures under Chapter 103F. Our courts have "consistently held that every enactment of the [L]egislature is presumptively constitutional, and a party challenging the statute has the burden of showing unconstitutionality beyond a reasonable doubt. The infraction should be plain, clear, manifest, and unmistakable." *Blair v. Cayetano,* 73 Haw. 536, 542, 836 P.2d 1066, 1069 (1992) (internal quotation marks, citation, brackets, and ellipses omitted). ANK has not met its burden of showing unconstitutionality beyond a reasonable doubt.

▮▮▮ ANK also argues that the statute is unconstitutional because "[t]he administrative agency is not empowered to pass on the validity of the statute; nor is it qualified to adjudicate the propriety of its own action." *HOH Corp. v. Motor Vehicle Indus. Licensing Bd. (HOH),* 69 Haw. 135, 143, 736 P.2d 1271, 1276 (1987). In *HOH,* the issue was not the propriety of procedural actions, but, rather, the constitutionality of a statute, and "[a]lthough an administrative agency may always determine questions about its own jurisdiction it generally lacks power to pass upon constitutionality of a statute." *Id.* at 141, 736 P.2d at 1275 (internal quotation marks, citation, and brackets in original omitted). In other words, an administrative agency does not have the authority to decide if its actions are constitutional; but Chapter 103F does give an administrative agency the authority to decide if its actions are otherwise proper. In suggesting that an administrative agency does not have the authority to review its own administrative actions, ANK misstates the holding in *HOH.*

## B. THE CIRCUIT COURT DOES NOT HAVE THE AUTHORITY TO REVIEW DOE'S DECISION AND UNDERLYING ACTIONS.

Assuming arguendo that Chapter 103F is constitutional, ANK argues that either HRS § 632-1 (1993) (Declaratory Judgments) or HRS § 603-21.9(6) gives the circuit court the power and obligation "to determine whether the DOE had exceeded its authority, misconstrued or violated a statute or rule, [or] deprived ANK of procedural rights."

▮▮▮ Although HRS § 632-1 "generally endorses declaratory relief in civil cases, it nonetheless disallows such relief where a statute provides a special form of remedy for a specific type of case." *Travelers Ins. Co. v. Hawaii Roofing, Inc.,* 64 Haw. 380, 386, 641 P.2d 1333, 1337 (1982) (internal quotation marks, ellipsis, brackets, and footnote omitted). "[W]here such a statutory remedy exists, declaratory judgment does not lie." *Punohu v. Sunn,* 66 Haw. 485, 486, 666 P.2d 1133, 1134 (1983).

▮▮▮ Chapter 103F provides for just such a "statutory remedy" for a "specific type of case"; namely, the protest process under HRS §§ 103F-501 through 103F-504. HRS § 103F-504 limits the protester to an administrative process as the "exclusive means" to resolve contract disputes. Therefore, declaratory relief under HRS § 632-1 is unavailable because that section specifically mandates that the statutory remedy provided in Chapter 103F must be followed. *See Travelers Ins.,* 64 Haw. at 386-87, 641 P.2d at 1337-38.

In the alternative, ANK claims that the circuit court had jurisdiction to review the legality of DOE's conduct "in the context of the court's general authority as described in HRS § 603-21.9(6)." We disagree.

▮▮▮ HRS § 603-21.9(6) provides that the circuit court has the power "[t]o make and award such judgments, decrees, orders, and mandates ... and take such other steps as may be necessary to carry into full effect the powers which are or shall be given to them by law." Contrary to ANK's contention, HRS § 603-21.9(6) does not give the circuit court jurisdiction to rule on a claim when the

statute limits review exclusively to an administrative body. As clarified in *Kaina v. Gellman*, 119 Hawai'i 324, 197 P.3d 776 (App. 2008), "HRS § 603–21.9(1) & (6) is a legislative restatement of the inherent powers doctrine," *Kaina*, 119 Hawai'i at 331, 197 P.3d at 783, which gives the courts "the inherent power and authority to control the litigation process before them and to curb abuses and promote fair process including, for example, the power to impose sanctions for abusive litigation practices." *Id.* at 330, 197 P.3d at 782 (internal quotation marks and citation omitted).

Because the Legislature did not give the circuit court the power or jurisdiction to review administrative appeals under Chapter 103F, the court did not err when it determined it did not have the authority to review DOE's decision and underlying actions.

## C. THE CIRCUIT COURT DID NOT ERR IN DISMISSING ANK'S TORT CLAIM FOR NEGLIGENCE.

■ ANK contends that DOE violated a legal duty to follow Chapter 103F and its administrative rules and therefore ANK had a viable tort claim for negligence.

The circuit court held that "[t]here is no private right of action under Chapter 103F, no tort duty is imposed by Chapter 103F, [and] therefore there is no cause of action for damages under Chapter 662."

■ First, we note that the circuit court based its analysis on a private right of action inquiry, not a standing inquiry. "[T]he standing inquiry focuses on whether *a particular* private party is an appropriate plaintiff," while "[t]he private right of action inquiry focuses on the question of whether *any* private party can sue to enforce a statute." *Cnty. of Hawai'i v. Ala Loop Homeowners*, 123 Hawai'i 391, 406 n. 20, 235 P.3d 1103, 1118 n. 20 (2010) (emphases in original).

In determining whether a statute provides for a private cause of action, the Hawai'i Supreme Court has applied the following criteria:

First, is the plaintiff "one of the class for whose especial benefit the statute was enacted"—that is, does the statute create a

right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

*Id.* at 407, 235 P.3d at 1119 (ellipses and brackets omitted) (quoting *Pono v. Molokai Ranch, Ltd.*, 119 Hawai'i 164, 185, 194 P.3d 1126, 1147 (App.2008)). Of the above criteria, the "legislative intent appears to be the determinative factor." *Rees v. Carlisle*, 113 Hawai'i 446, 458, 153 P.3d 1131, 1143 (2007). *See also Whitey's Boat Cruises, Inc. v. Napali–Kauai Boat Charters, Inc.*, 110 Hawai'i 302, 313 n. 20, 132 P.3d 1213, 1224 n. 20 (2006).

■ To determine legislative intent, we must first look to the language of the statute. *Morgan v. Planning Dep't, Cnty. of Kauai*, 104 Hawai'i 173, 185, 86 P.3d 982, 994 (2004). "[L]egislative enactments are presumptively valid and should be interpreted in such a manner as to give them effect." *Id.* (internal quotation marks and citation omitted).

Although a departure from a literal construction of a statute is justified when such construction would produce an absurd result and is clearly inconsistent with the purposes and policies of the act, this court may not reject generally unambiguous language if construction can be legitimately found which will give force to and preserve all the words of the statute.

*Id.* (ellipsis omitted) (quoting *Sato v. Tawata*, 79 Hawai'i 14, 23, 897 P.2d 941, 950 (1995) (Ramil, J., dissenting)).

Chapter 103F provides clear language indicating that the protest and reconsideration process is "final and conclusive." HRS § 103F–502(d). The chapter further states that "[t]he procedures and remedies provided for in this part, and the rules adopted by the policy board, shall be the exclusive means available for persons aggrieved in connection with the award of a contract to resolve their concerns." HRS § 103F–504. The legislative history supports the limitations on court challenges where Chapter 103F intended a "simpler, standardized process" for the pro-

curement of health and human services. S. Stand. Comm. Rep. No. 1465, in 1997 Senate Journal, at 1447–48.

ANK argued before the circuit court that *Tseu v. Jeyte,* 88 Hawai'i 85, 962 P.2d 344 (1998), controlled and that when an administrative agency fails to follow the applicable rules and statutes, it can be sued in tort. The circuit court correctly distinguished *Jeyte,* noting that the negligence issue there involved a substantive right, not a procedural defect as alleged in the instant case. Although ANK argued that DOE substantively violated Chapter 103F when the evaluator allegedly did not follow the criteria listed in the RFP, this protest was made in accordance with Chapter 103F, which mandates that the reconsideration decision of the agency is final.

The statutory language clearly indicates the intent of the Legislature to deny a private right of action. Therefore, there is no action in tort. Because there is no private right of action under Chapter 103F, there is also no cause of action for damages under HRS Chapter 662.

### D. ANK'S CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF CONCERNING THE VALIDITY OF CHAPTER 103F WERE NOT TREATED AS MOOT.

ANK contends that "[a]ssuming the court based its decision in whole or in part on mootness, the court clearly erred." ANK asserts that its claims for declaratory and injunctive relief are not moot because the issue of the constitutionality of Chapter 103F qualifies for an exception to the mootness rule, being "capable of repetition, yet evading review." ANK cites to *Kaho'ohanohano v. State,* 114 Hawai'i 302, 332–33, 162 P.3d 696, 726–27 (2007) (issue was not moot even

though Act fully implemented), to argue that "[w]hether or not the underlying DOE contract has concluded ha[s] no bearing on whether this court can grant the relief requested."

The circuit court, in its oral indication as to how it would rule, agreed with ANK that the issue of constitutionality was not moot, stating that "[c]laims for declaratory relief regarding, one, the constitutionality of Chapter 103F and, number two, the Defendant's alleged failure to comply with the applicable procedural law are not moot since the alleged violations are capable of repetition." The circuit court orally considered the two issues and voiced its inclination as to how it would rule on the issues. Contrary to ANK's contention, the circuit court properly considered ANK's claims for declaratory and injunctive relief and did not base its ruling on mootness.

### E. JUDICIAL REVIEW UNDER HRS CHAPTER 91 (CHAPTER 91) IS PRECLUDED BY HRS § 103F–504.

ANK contends the circuit court erred in its March 20, 2006 Order when the court dismissed Count I of the First Amended Complaint, finding "that judicial review under [HRS] Chapter 91 is precluded by [HRS] § 103F–504." ANK claims the circuit court mistakenly thought ANK was arguing for judicial review under Chapter 91, which had been unsuccessfully invoked by ANK in Civil No. 05–1–1659.[4] Instead, ANK claims that its argument, which it incorporated into Count I of its Second Amended Complaint,[5] was that HRS § 91–14 (1993 & Supp. 2010) provides "guidelines that the court could adopt if it concluded that it had a jurisdictional basis for review of the DOE actions" under the Hawai'i Constitution and HRS § 603–21.9(6).

---

4. In a separate circuit court action, Civil No. 05–1–1659, the Honorable Eden Elizabeth Hifo dismissed the case for lack of jurisdiction. ANK appealed to the Hawai'i Supreme Court. In an unpublished summary disposition order, the Hawai'i Supreme Court held that "the circuit court did not err in ruling that it lacked HRS chapter 91 jurisdiction in the instant case" because the protest process "did not constitute a 'hearing' within the meaning of HRS chapter 91." *Alaka'i Na Keiki, Inc. v. Hamamoto,* No. 27559 (Haw.

Jan. 22, 2007) (SDO), 113 Hawai'i 210, 150 P.3d 1281, 2007 WL 158980 (2007).

5. In ¶ 50 of the First Amended Complaint and ¶ 54 of the Second Amended Complaint, ANK made the same argument: "The Court may utilize the criteria for judicial review s[sic] in HRS § 91–14 where the court has a separate jurisdictional basis to review agency action."

Because ANK restated in Count I of its Second Amended Complaint the same Chapter 91 argument that it had made in Count I of its First Amended Complaint, ANK had its day in court on this argument. There was no error.

## IV.

The "Judgment in Favor of Defendant Patricia Hamamoto in Her Official Capacity as Superintendent of Education and Against Plaintiff Alaka'i Na Keiki, Inc., as to All Claims Asserted in the Second Amended Complaint" filed on March 4, 2009 in the Circuit Court of the First Circuit is affirmed.

